## Dibrell v. Citizens National Life Ins. Co.

(Decided February 13, 1913.)

Appeal from Jefferson Circuit Court.
(Common Pleas Branch, Second Division.)

1. **Insurance, Life—Non-payment of Premiums—Lapsing of Policy—Note for Previous Premiums.**—The fact that the company treated as a subsisting obligation a note given for a previous premium, did not prevent the policy from lapsing upon the non-payment of a subsequent premium, the policy so providing.

2. **Insurance, Life—Non-forfeiture Clause—Extended Insurance—Rule as to.**—Under a non-forfeiture clause provided for extended insurance if there is no indebtedness to the company, the indebtedness must be deducted from the surrender value, and if the indebtedness to the company is equal in amount to the surrender value, there is nothing to apply to extended insurance; and this rule applies although the indebtedness may not be secured by a lien on the policy.

3. **Insurance, Life—Surplus—Pleading.**—An averment that under the

laws of Kentucky there was a sufficient surplus to have carried the policy beyond the death of the insured, is a statement merely of a conclusion of law.

4. Insurance, Life—Paid-up Insurance Provided for by Statute.—Under the statute of Kentucky paid-up insurance, not extended insurance is provided for, and the amount to be applied for this purpose must be not less than two-thirds of the reserve on the original policy.

5. Insurance, Life—Collection of Earned Premium.—An insurance company may collect an earned premium without waiving the forfeiture of the policy, on account of the non-payment of a subsequent premium.

IKE LANIER and DURELLE & FLEECE, for appellant.

HELM BRUCE and BRUCE & BULLITT, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

The Citizens Life Insurance Company on June 26, 1905, issued to Jefferson L. Dibrell a policy, the material parts of which are as follows:

Citizens Life Insurance Company of Louisville, Kentucky, in consideration of the application of this policy, which is hereby made a part of this contract, and of four hundred, sixty-four and 60-100 Dollars, and a like sum on the twenty-sixth day of June in every year during the continuance of said contract, insures the life of Jefferson L. Dibrell of Bonair in the County of White, State of Tennessee, (hereinafter called the insured) in the sum of Ten Thousand Dollars, to be paid at the home office of the company in the City of Louisville, less any indebtedness of the insured or beneficiary to the company, immediately upon receipt and approval of proofs of the death of the insured, to his wife, Annie C. Dibrell, (or to such other beneficiary or beneficiaries as may be designated by the insured, as hereinafter provided), this policy being then in force. This policy is *not* rendered void by any change of occupation or residence, nor by any mode, time or place of death. If the premiums are duly paid as required, this policy, after it has been renewed beyond the first year shall be incontestable.

TABLE OF LOAN AND SURRENDER VALUES.

| | Insurance Extended | Paid-Up Ins. | Cash Surrender Values | Loan Values |
|---|---|---|---|---|
| 1 year | years 60 days _____$ | $ | $ | $ |
| 2 years | 1 year 150 days _____$420 | | $240.00 | $480 |
| 3 years | 2 years 241 days _____$830 | | $483.30 | $720 |
| 4 years | 3 years 269 days _____$1240 | | $729.60 | $970 |
| 5 years | 4 years 239 days _____$1630 | | $978.60 | $1220 |

Among the provisions printed on the following page
are these:

"Non-Forfeiture Provisions. If this policy should
lapse through non-payment of premiums after it has
been in force for one year, the company will, provided
there is no indebtedness against it, and subject to other
conditions of the policy, extend automatically without
participation, the amount insured by this policy for the
number of years and days named in the table of extended
insurance. In lieu of the extended insurance, on the
second or any subsequent anniversary of this policy,
or within thirty days thereafter, this policy being in
force, and all premiums having been duly paid, the com-
pany will grant the following options: First, paid-up
non-participating insurance payable at death for the
sum named in the table of paid-up insurance, upon the
legal surrender of all claims hereunder to the company
at its Home Office; or Second, will pay the cash sur-
render value provided for on surrender as aforesaid.

"Loans. Upon any anniversary of this policy, after
the first, while in force, all premiums having been duly
paid to the end of the next policy year, a cash loan, not
exceeding the amount named in the table of loan values,
will be granted upon the sole security of this policy,
interest being at five per cent, per annum in advance.
Applications for loans must be made in writing by the
insured to the Home Office of the company, and the
loan will be subject to the terms of the company's loan
agreement. The amount of loan available includes any
previous loan unpaid.

"Premiums. * * * In case any premium
should not be paid when due, according to the terms of
this contract, then, and in every such case, this policy
shall cease and determine, except as otherwise herein
expressly provided."

The insured paid the first, second and third premiums
upon the policy. On November 9, 1907, he borrowed
$483 upon it, executing a loan agreement by which the
policy was pledged for the loan. As shown by the table
the cash surrender value then was $483.30. He did not
pay the premium due June 26, 1908 but executed his
note to the company for it due in three months, less a
dividend that was then due him. When the note fell due
on September 26, 1908, the company at his request ex-
tended the time of payment until January 26, 1909, at

which time he being still unable to pay, at his request the time of payment was extended to February 12, 1909. He then wrote to the company asking further time, saying he did not want his policy to lapse, but wished the company to suggest some plan by which he could keep it alive until he was able to make the necessary payment. The company did not reply to this letter. When the next payment fell due on June 26, 1909, he failed to pay the premium or to pay any attention to it. In this condition of things he died on May 20, 1910. This suit was brought by the beneficiary, Anne Dibrell, to recover on the policy. The circuit court refused her any relief and she appeals.

It is earnestly insisted for her that the company did not notify the insured that his policy was lapsed, and that it treated the note as a subsisting obligation, thus electing to treat the policy as subsisting. We are referred to a number of decisions of this court in which this position has been sustained; and if the assured had died before June 26, 1909, and non-payment of the note was the only difficulty in the way of a recovery, those opinions would be applicable. But the difficulty here is that by the terms of the policy if any premium was not paid when due the policy ceased; and when the premium due June 26, 1909 was not paid, Dibrell, who was evidently acquainted with the terms of his policy, took no steps to secure an extension and the policy then ceased, unless it was saved by the non-forfeiture provision. In the non-forfeiture provision it was provided that if the policy should lapse through the non-payment of premiums after it had been in force for one year, the company, provided there was no indebtedness against the policy, would extend automatically the insurance according to the tables printed in the policy. The necessary meaning of this clause is that only the surplus after paying the indebtedness to the company, would be applicable to the purchase of extended insurance where there was indebtedness against the policy. In this case the cash surrender value of the policy when the premium was not paid on June 26, 1909, was $729.60. On that date the amount due the company by Dibrell on account of his loan and the balance due on the premium note executed June 26, 1908, was $768.13. In other words instead of there being a balance left to purchase extended insurance, he was indebted to the company $38.53, and he was therefore not entitled to extended insurance under the terms

of the policy. It is said that there was no lien on the policy to secure the premium note and that therefore the company had no right to deduct this from the cash surrender value; but it was an indebtedness to the company, and by the terms of the policy, the company was authorized to deduct the indebtedness from the cash surrender value under the non-forfeiture clause.

There is an averment in the petition that under the laws of Kentucky, there was a sufficient surplus to have carried the policy beyond Dibrell's death, but this is a mere statement of a conclusion of law. No facts are stated warranting the conclusion. In the recent case of Jefferson v. New York Life Insurance Co., 151 Ky., 609, it was held that under the statute only paid-up insurance is provided for, and that the reserve for such paid-up insurance shall not be less than two-thirds of the reserve of the original policy. There is nothing alleged here to show that two-thirds of the reserve of the original policy, less the outstanding indebtedness on account of the policy, would have entitled the assured to any paid-up insurance under the statute. This in fact was not sued for. The suit was brought on the policy to recover the full amount under the extended insurance clause.

It is insisted that as shown by the note the company accepted a payment on the premium note in October, 1909, and thus treated that note as a subsisting obligation. But by the terms of the note the company was entitled to collect the premiums so far as it was earned, and the alleged payment is less than the premium that was earned up to the time the note was marked cancelled.

The note is in these words:

"$367.76          Bon Air, Tenn., June 26, 1908.

September 26, 1908, after date I promise to pay to Citizens Life Insurance Company, at its Home Office, for value received, the sum of Three Hundred Sixty-seven and 76-100 Dollars, with interest at six per cent per annum from date, with attorney's fees, and waiving relief from valuation and appraisement laws. Same being all the amount of the premium due and payable this 26th day of June, 1908, on Policy No. 1777, of said Company.

"I understand and agree that in consideration hereof, said policy is extended until default is made in payment of this note, when all rights and benefits secured thereby shall cease and determine without notice, and said policy shall be, *ipso facto,* null and void. I hereby agree that

this note shall not be deemed a payment for Life Insurance, but only for an extension of time for the payment of the same, and the non-payment of this note when due, and the termination of said insurance by reason thereof, shall not impair the validity of this note, but the same shall become due and payable for the proportion of its face and interest that the time the insurance has been extended for bears to the whole time covered by said premium.

J. L. Dibrell.''

Across the face of the note are stamped these words: "Not paid Feb. 26, 1909, Policy lapsed."

On the back of the note are these words and figures:

|  |  |  |  |
|---|---|---|---|
|  | $367.76 |  |  |
| Int. to 10-26, _____ | 7.35 | Earned Premium. |  |
|  | ——— | June 26-Jan 26 |  |
| Paid _____ | $375.11 | Paid 10-15_____ | $214.53 |
| Int. 10-15 to 1-26__ | 73.28 | Less Amn't. _____ | 65.93 |
|  | ——— |  | ——— |
|  | $301.83 | Pd. 10-15-09_____ | $148.60 |
|  | 4.53 | Int. to 1-26_____ | 4.53 |
|  | ——— |  | ——— |
|  | $306.36 |  | $153.13 |

It will be observed that the figures $367.76 are the amount of the note. The figures $7.35 it will be observed is the interest on the note from its date to October 26. It will also be observed that the credit of $73.28 is then deducted leaving a balance of $301.83. The other statement is apparently a statement of the earned premium from June 26, to January 26, $214.53. Under this are these words: "Paid 10-15, $65.93." It will be observed that the amount, $65.93, is the same as the credit given above $73.28, less the interest $7.35, and the day and month are the same. It is true there is just below this the figures 10-15-09, but the nine has an eight written over it, and we are satisfied from all the endorsements written on the note that the only credit paid was $73.28 on October 5, 1908. But, however, this may be, as we have said, the company had a right to collect the earned premium under the terms of the note after the policy lapsed. We therefore conclude that the circuit court

properly held that there could be no recovery on the policy.

On October 13, 1905, the company issued to Dibrell a similar policy for $10,000. He paid the first three premiums. He failed to pay the premium due October 13, 1908, and gave a note for it. When this note fell due on April 13, 1909, time was extended to July 17, 1909, and he not being able to pay, the time was extended to July 20, and then at his request, to August 13, 1909. The premium which fell due on October 13, 1909 was not paid. On December 2, he requested a further extension of time to meet his notes and the company did not answer his letter. He borrowed of the company on November 9, 1907 on this policy $483. At the time he failed to pay the premium on October 13, 1909, the cash surrender value of the policy was $729.60. The indebtedness to the company on account of the policy was $932.12 leaving a balance against him of over $200. There was therefore nothing to apply to extended insurance, and for the reasons we have given as to the other policy, the circuit court properly refused a recovery on this policy.

Judgment affirmed.