## SADIE W. KARNEY v. RELIANCE LIFE INSURANCE CO.

Western Section.   December 8, 1928.

Petition for Certiorari denied by Supreme Court, April 13, 1929.

A. E. Horn, Leon Fenerstein and W. G. Cavett, of Memphis, for appellant.

Wilson, Gates & Armstrong, of Memphis, for appellee.

SENTER, J.  In this cause the plaintiff below, Sadie W. Karney, sued the defendant, Reliance Life Insurance Company, of Pittsburgh, Pa., on two policies of life insurance issued by the defendant on the life of John T. Karney.  The 'declaration is in four counts. The first two counts are on a policy in the sum of $2,000, and the statutory penalty.  The third and fourth counts are on a $1000 policy and the statutory penalty.  The defendant Insurance Company filed pleas to the declaration and each count thereof.  By the first plea it denies that it owes to the plaintiff the sum sued for or any other amount.  By the second plea it denies that the two insurance policies sued on were in force and effect at the time of the death of the insured, but avers that both of said policies sued on had lapsed and become void and of no effect by reason of the non-payment of premiums thereon, and because the insured had not complied with the terms of the policies and had not paid the premiums and that said insured had no extended insurance under said policies which carried the same and kept them in force until the time of his death, and that both of said policies had been permitted to lapse by the insured.  The third plea goes to the second and fourth counts of the declaration, and is a plea of not guilty of the wrongs and injuries charged in the second and fourth counts of the declaration.  The fourth plea to the second and fourth counts of the declaration sets up that said insurance policies sued on were not in force at the time of the death of the insured and had lapsed and become of no effect, and denies that the failure of the defendant insurance company to pay said policies upon the death of the insured was wilful or malicious, but said refusal was in good faith, the defendant having reason to believe, and believing that said policies sued on were not in force and effect at the time of the death of the insured, and denies the right of plaintiff to a recovery under either count of the declaration.

The defendant insurance company was subsequently permitted to file an additional plea, and by which it is said that the provisions of the policies, which provide for the insurance to be automatically extended, did not apply to this case and that the insurance was not automatically extended under either of the policies, because the insured had borrowed on the respective policies, and had executed notes, one for the sum of $151.94, on the $2,000 policy, and one for the sum of $75.97, on the $1,000 policy, each of said notes due and payable one year after date, and that neither of the said notes

nor the interest thereon were paid, and that there was, therefore, not sufficient cash value to extend the insurance the two years and six months, or until the time of the assured's death, because he had depleted his cash value by the above loan and did not have such automatic extended insurance, and that both of said policies were therefore made void and cancelled by failure to pay the fourth annual premium.

The parties will be referred to as in the court below, Sadie W. Karney, as plaintiff, and Reliance Life Insurance Company, of Pittsburgh, Pa., as defendant.

At the conclusion of the evidence, both parties moved the court for a directed verdict. The plaintiff's motion for a directed verdict was for a verdict for the amount of the respective policies, and also for the twenty-five per cent statutory penalty. The defendant's motion for a directed verdict was for a verdict on all counts of the declaration in its favor. The court sustained the plaintiff's motion as to the amount of the policies under counts one and three, respectively, and overruled its motion as to counts two and four on the question of penalties, and overruled the motion of the defendant and the jury returned a verdict accordingly for the plaintiff for the principal sum of the respective policies with interest. The defendant made a motion for a new trial, setting forth several grounds in the motion, and for a judgment in its favor non obstante veredicto. Upon a hearing of this motion, the same was sustained, and the motion for a new trial granted, and judgment rendered in favor of the defendant. The plaintiff then made a motion for a new trial, which motion was overruled. From this action of the court the plaintiff has appealed to this court, and has assigned numerous errors.

By the first assignment, it is said that the court erred in granting the motion of defendant for a new trial, and in directing a verdict and judgment in its favor, and that said action of the court is contrary to the law and the evidence, and that there is no evidence to sustain the action of the court. By the second assignment, it is said that the court erred in excluding the evidence to the effect that there was a long established custom on the part of the defendant company to notify the insured or beneficiary .whenever there was an effort to cancel the policy or to demand payment of any notes and seek a forfeiture by reason of non-payment of notes and premiums. By the third assignment, it is said that the court erred in directing a verdict and judgment in favor of defendant, because under a proper construction of the contract of insurance sued on, the plaintiff was entitled to recover of the defendant the amount of the respective policies, less any indebtedness which the insured owed the defendant, and the amount of premiums due, if any. By the fourth assignment it is said that the court erred in

sustaining defendant's motion for a new trial, and in entering judgment in its favor, because under the provisions of the policy sued on, and the uncontradicted evidence, Mrs. Karney was entitled to recover on both policies. By the fifth assignment of error, it is said that the court erred in not holding that the notes given did not become due and payable until demand for payment had first been made, and that the policies could not be declared forfeited until demand for the payment of the notes and a failure and refusal to pay the notes.

By the sixth assignment, the action of the court in admitting evidence by an actuary for the defendant insurance company, and to prove by said actuary certain calculations, books, and papers which were not attached to and made a part of the policies of insurance, and because said evidence was in conflict with certain provisions contained in the policies sued on, is challenged for error. The seventh and eighth assignments are directed to the action of the court in excluding certain evidence and in admitting certain evidence with reference to the custom of the defendant to notify the insured as to the due dates of notes given for premiums, and of the due dates of premiums, and also in permitting the actuary to testify to certain calculations and deductions.

We will not attempt to take up each of these several assignments of error separately or in the order in which they are made. If the provisions in the policy made the basis of the contention of the parties is to be construed as contended for by the plaintiff, certain of the assignments of error would have to be taken up and disposed of. Otherwise not. If the provisions in the policy are to be construed as contended for by the defendant, then we think certain of the assignments of error become immaterial. The real question involved in this case is the proper construction to be given to the provisions contained in the respective policies under the head of "Options on Surrender or Lapse." Under this head the respective policies provide as follows:

"After this policy shall have been in force three full years the owner, within one month after any default may elect (a) to accept the value of this policy in cash, or (b) to have the insurance continued in force from date of default, without participation and without the right to loans, for its face amount, less any indebtedness to the Company hereon, or (c) to purchase non-participating paid up insurance, payable at the same time and on the same conditions as this policy. The cash value will be the reserve at the date of default on this policy, computed according to the American Experience Table of Mortality and interest at the rate of three and one-half per centum per annum, less not more than two and one-half per centum of the

amount insured by this policy and less any existing indebtedness to the company on this policy. The term for which the insurance will be continued or the amount of the paid up policy will be such as the cash value will purchase as a net single premium at the attained age of the insured, according to the American Experience Table of Mortality and interest at the rate of three and one-half per centum per annum. If the owner shall not, within one month from default, surrender this policy to the company at its Home Office for a cash surrender value or for paid-up insurance as provided in options (a) and (c), the insurance will be continued as provided in option (b).

"The figures in the following table are computed in accordance with the above provisions and upon the assumption that there is no indebtedness on the policy."

The policy contains what is called a non-forfeiture table, which table is made up to apply to a policy contract of $1,000, and recites that the loan, cash, or paid up insurance available in any year will be the same as the amount stated in the table for that year.

By this table it appears that at the end of the third year the policy has a cash or loan value of $78; automatic extension two years six months; paid up insurance $118. These amounts would be doubled as to the cash or loan value and the paid up insurance value on a policy for $2,000.

The respective policies provide that if the insured fails to exercise either of the settlements within one month from default, that the insurance would be continued as provided in option (b). It is conceded that the insured failed to pay the note given for the third annual premium when the same became due, and also failed to pay the fourth annual premium. It is the urgent insistence and contention of plaintiff that under option (b), and according to the table, if the policy had been in force three years, the policies were automatically extended for a period of two years and six months, upon the failure of the insured to pay the third premium note when due, less the amount of the notes on the respective policies. On the other hand, the defendant insists that under a proper construction of the provisions of the policies, the indebtedness or loan represented by the notes is to be deducted from the cash surrender value as shown by the table contained in the respective policies, and if the indebtedness does not amount to as much as the loan value, which is the same as the cash surrender value, that the policy will be extended for such length of time only as the balance remaining would purchase, and is controlled by the provisions contained in the clause under the head of "Options on Surrender or Lapse," which reads as follows: "The term for which the insurance will be continued or the amount of the paid-up policy will be such as the

cash value will purchase as a net single premium at the attained age of the insured according to the American Experience Table of Mortality and interest at the rate of three and one-half per centum per annum."

It is insisted for the plaintiff that in order to have the policy construed in this way, it becomes necessary to read the provisions in inverse order.

We are of the opinion that the several provisions of the policy should be read together, and each should be given the significance that shows the intention of the contracting parties.

It is the settled rule of construction, in construing contracts of insurance, where the provisions are not free from ambiguity, to construe same favorably to the insured and strictly against the insurer. (Kavanaugh v. Ins. Co., 117 Tenn., 34.)

If we construe the provisions of the policy together in order to arrive at the meaning, it makes little difference the order in which the provisions of the policy are arranged. If the language of the policies under the head of "Options on Surrender or Lapse" ended with the words under condition or settlement (b) with reference to extended insurance, and no other provision or explanation was contained in the policy, we would be constrained to hold that the plaintiff would be entitled to have the policy construed as contended for, that is, that the policies were automatically extended for the full face or value for a period of two years and six months, less the indebtedness owing to the company at the time of the death of the insured. But such is not the case. In the same paragraph and under the same heading it is provided, "the term for which the insurance will be continued . . . will be such as the cash value will purchase as a net single premium at the attained age of the insured . . . ." This language clearly explains option (b). There is the further provision contained in the policy: "The figures in the following table are computed in accordance with the above provisions and upon the assumption there is no indebtedness on the policy."

When taking the several provisions of the policy into consideration, and reading these provisions as a whole, we are of the opinion that the amount of the indebtedness is deducted from the cash value, and after deducting the amount of the indebtedness it remains as a mere matter of calculation to determine for what period the remainder will purchase extended insurance. This is specifically provided for in the policy in the language above quoted.

In the case of Mills v. National Life Ins. Co., 136 Tenn., 350, there is a full discussion of this question. In that case it was said by the court:

"We do not find any provision of the policy whereby it could be contended that continued insurance in the full amount should exist, and an indebtedness be outstanding at the same time. When the policy lapses, it becomes so to speak, in liquidation under its terms, and if the reserve or cash value has been withdrawn, there is no fund left to pay for continued insurance during the extended term, and therefore the extended term insurance fails to take effect. This is necessarily sound insurance business.

"The assured must have known that he had anticipated the cash value of his policies, and had withdrawn the only fund with which continued insurance was to be purchased, and must have known that when the policy lapsed, the said indebtedness under the terms of the policy would be deducted from the cash value. This was the condition under which the policy provided he was entitled to make the loan. He could not withdraw the money which he had paid in, and at the same time insist upon the insurance which that money would buy if left in cash to the credit of his policy."

We think it clear both from the provisions in the policy as well as the provision in the notes executed by the insured in settlement of the third premiums, that the notes constituted an indebtedness against the policies. In the case of Dewerthern v. Reserve Loan Life Ins. Co., decided by the Supreme Court of the State of Missouri, and reported in 234 S. W., 1048, it was held that notes given in settlement of premiums constituted a debt on account of the policy. This was held by the Missouri court in construing a provision in the policy to the effect that any existing indebtedness to the company on account of this policy, if not paid in cash, will reduce the extended term of the insurance, in the ratio of such indebtedness to the reserve for such insurance. The indebtedness involved in that case were premium notes, and on this subject the court said:

"Even though we do not treat the loan agreement as a part of the contract, it is an evidence of debt, and the policy in question provides that any existing indebtedness to the company on account of this policy, . . . this is certainly an indebtedness on account of the policy."

In the case of Dibrell v. Citizens National Life Ins. Co., 152 Ky., 208, 153 S. W., 428-29, a non-forfeiture clause and option provisions were construed, and in which case it was said:

"That no lien was given on a life insurance policy to secure a premium note did not prevent the insurer from deducting the amount of a past due premium note from the cash surrender value of the policy in determining whether the insured was entitled to extended insurance, under a non-forfeiture clause

providing for extended insurance, according to the printed tables in the policy, if it should lapse and there was no indebtedness against the policy.''

In the same case it was further said:

"Under a clause of a life insurance policy providing that if the policy should lapse for non-payment of premiums, and there was no indebtedness against it, the insurance would be automatically extended according to the tables printed in the policy, only the surplus after payment of indebtedness due the insurer on a loan to the insured and of the unpaid premium was applicable to the purchase of extended insurance. . . .''

Numerous authorities are cited by the respective parties, but an examination of these cases go to sustain the construction generally placed upon provisions referring to non-forfeiture, or to options for settlement under a lapsed policy, to the effect that any indebtedness against the policy, or on account of the policy, is to be deducted from the cash value, or the surrender value, as it is sometimes expressed, and the balance remaining, if any, is applied to the purchase of extended insurance. The cases proceed upon the assumption that the cash value simply represented the reserve, and this reserve is to the credit of the policy holder, and upon a lapse of the policy under the non-forfeiture clause, this reserve may be used by the policy holder in any one of the settlement provisions contained in the policy at the option of the policy holder, and if the policy holder fails to indicate which settlement he will take, on the lapse of the policy, and the policy so provides that the insurer may apply to either one of the settlement provisions, any indebtedness against the policy, or on account of the policy should be deducted from the cash value, and if there remains any balance it will be applied as the policy directs. Under the provisions of the policies involved in this case, where the assured, upon a lapse of the policy for non-payment of premiums, fails to indicate which settlement option he will take, the settlement will be made under provision (b), the extended insurance provision. If there had been no indebtedness to be charged against or deducted from the cash reserve, or cash surrender value, at the expiration of three years the policies would have been continued in full force without additional premiums being paid for a period of two years and six months. That is to say, the cash reserve at the end of three years, without the payment of additional premiums, would have continued the policy in force, or rather would have purchased extended insurance for a period of two years and six months. However, as stated by the court in Mills v. Ins. Co., 136 Tenn., 350, ''When the policy lapses it becomes, so to speak, in liquidation under its terms, and if the reserve or cash value has been withdrawn, there is no fund

left to pay for continued insurance during the extended term, and therefore the extended term insurance fails to take effect.''

This brings us to a consideration of the question made by certain of the assignments of error as to the competency of the evidence of the actuary, and the calculations testified to by the actuary.

In the view of the case we have taken this evidence was competent, since we hold that the indebtedness which the assured owed to the insurance company, under a proper construction of the provisions of the policies, should be deducted from the reserve or cash value as shown by the table set forth in the policies, and the balance remaining to be applied to the purchase of extended insurance for the period calculated on the basis as fixed by the policy. The evidence complained of by appellant becomes material for a proper determination under a proper calculation of the term of extended insurance that this balance remaining to the credit of the insured out of the reserve or cash value would purchase.

A considerable portion of appellant's brief is devoted to a discussion of certain of the assignments of error on the question of the alleged failure of the insurance company to notify the assured of the cancellation of the policy upon default in the payment of the third premium note, and the fourth premium. It is the contention of appellant that the defendant insurance company had an established and long continued custom of giving written notice to the insured of the due dates of premiums, and that it failed to give any notice to the insured that his policy would lapse at a given date unless the notes were paid. It being further contended by appellant that a failure by the defendant to give such notice, and at the same time to retain in its possession the notes executed to it by the insured, operated as a waiver of the forfeiture.

While it is true forfeitures are not favored by the law, yet the provisions of the policy did not make a contractual obligation upon the part of the defendant to furnish, or to give, notices. To the contrary, the provisions in the policy as well as in the notes, are clear and specific on the subject that a failure to pay the premiums when due would operate as a forfeiture or a lapsing of the policy. To the same effect is the provision in the note. However, it appears from the evidence that a representative of the defendant insurance company called on the insured and personally notified him of the condition of the policy and urged upon the insured the importance of re-instating the policy. This representative of the defendant personally called on the insured two or more times for the purpose of urging him to re-instate these policies, and on each occasion the assured stated that it was not his purpose or intention to carry the insurance longer, claiming that he was not financially able to do so. It also appears that the manager of the Memphis, Tennessee, office

wrote the assured advising him of his failure to pay the note and the fourth year's premium, but it does not appear that the assured received these letters. In either event, no question of waiver of any forfeiture clause is contained in the pleadings. The declaration in the respective counts as to the two policies proceeds on the theory that the insured having paid three annual premiums, one of which was by note in settlement of the third premium, was entitled to the full two and one-half years extended insurance, and from which the amount of the indebtedness should be deducted, and that the recovery therefore, should be for the full amount of the two policies less the indebtedness represented by the premium notes. No suggestion that any conduct of the insurance company had operated as a waiver of any forfeiture clause. The pleas filed by the defendant specifically set out the contention of the defendant with reference to the term, of extended insurance to which the insured was entitled under the provision of the policy. The plaintiff did not file any replication to these pleas raising the question of a waiver of the forfeiture clause because of a failure to give notice. We are therefore of the opinion that the learned trial judge properly held that under the pleadings the question of a waiver of the forfeiture clause was not made an issue. However, we are of the opinion that the plaintiff by the evidence which was excluded, did not make out a case of long continued custom in the matter of giving written notice of the due dates of premiums and notes. At best this was a matter of defense, since the provisions of the policies sued on did not obligate the defendant to give such notice. In the case of Ressler v. Life Ins. Co., 110 Tenn., 411, we find this statement:

"A policy of life insurance is forfeited without any affirmative action on the part of the insurance company by the failure to pay at maturity a note given for the payment of the premium, which was accepted on condition that if not paid at maturity the policy shall cease and determine."

The two notes signed by the insured given in settlement of the third annual premiums, contain this provision:

"I agree that the above amount shall be a lien on said policy and shall be deducted with compound interest at the rate of 5% per annum from any cash settlement made under the policy. It is further agreed that if this note be not paid on or before maturity it will automatically be extended to the next succeeding anniversary date of said policy, providing the policy is in force on that date, and can thereafter be extended annually for one year by payment of the interest hereon at the rate hereinbefore mentioned and the premium, if any, then due. It is also agreed that in the event of default in the payment of any premium on said policy that this note will thereon become im-

mediately due and payable and said policy will be cancelled, in which event the said company's liability will be determined in accordance with the non-forfeiture provision of said policy.''

In the case of Edington v. Ins. Co., 134 Tenn., 188, it is said:

"Ordinarily, as stated in Cooley's Briefs on the Law of Insurance, if the contract provides that it shall be void if the premiums are not paid when due, or within a specified time thereafter, default in the payment of a premium when due will determine the insurance, without any action on the part of the insurer; and when a policy has so become void it cannot be revived without a new contract. Id., Vol. 3, pp., 2266-2261.''

We are of the opinion that the assignments of error based on the question of a waiver because of the failure of the defendant to give the written notice, cannot be sustained.

With reference to the fact that the defendant retained possession of the premium notes, as evidential of the fact that these notes had not been charged or applied to the reserve, or rather that the reserve had not been applied to the payment of the notes, we cannot sustain the contention made by appellant. This question was before the Supreme Court of the State of Kentucky and decided adversely to the same contention there being made, in the case of Hartford Fire Ins. Co. v. Johnson, 217 Ky., 826, and also reported in 290 S. W., 673, and wherein it is said:

"The retention of the note after its maturity, the failure to demand the surrender of the lapsed policy for cancellation, the failure of the fire insurance company to notify Johnson that the policy had lapsed, and its failure to accept payment of the premium installment after the fire, are not sufficient to give validity to this insurance."

In that case the question was on premium notes given for fire insurance, and there was no question of a reserve in the hands of the company to be applied to the premium notes, and to that extent the Johnson case by the Kentucky court is distinguished from the instant case. However, these premium notes were evidential of the indebtedness, and the defendant was entitled to retain the notes in its possession as evidence of the indebtedness which the insured owed the insurer on account of these policies. The provision contained in these policies operated to automatically apply the reserve or cash value to these notes. Upon a failure of the insured to elect which of the three settlement provisions (a), (b), or (c), the policy provided that the settlement would be under option ''(b).''

The defendant was given no choice as to which of the three settlements would be applied. This was controlled by the specific direction contained in the policy, and where the insured failed to make an election, the policy provided that the provision or option (b)

would apply. We having reached the conclusion that under option (b) any indebtedness on the policies would be deducted from the reserve or cash value, and the net balance would be applied to the purchase of extended insurance for such term or period of time as the net balance would purchase under the calculation made in accordance with the policy provision on the subject, the retention of these notes could not operate as a waiver of the forfeiture provision. Under the evidence adduced, based upon the policy provision, the net balance remaining after deducting the indebtedness from the cash reserve, was sufficient to purchase extended insurance for a period of about one month. The insured lived considerably more than that length of time. Hence, the retention by the defendant of these premium notes after they became due, becomes immaterial.

We are of the opinion that the assignments of error cannot be sustained, and they are accordingly overruled, and the judgment of the lower court is affirmed. Appellant, and surety on the appeal bond, will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.