## 17147.   HALLY *v.* STANDARD LIFE INSURANCE CO.

DECIDED SEPTEMBER 28, 1928.

624

*Bryan & Middlebrooks, N. P. Anderson Jr., Samuel Barnett,* for plaintiff.

*Kendrick L. Scott, Little, Powell, Smith & Goldstein,* for defendant.

STEPHENS, J. (After stating the foregoing facts.)

My views are at variance with those of my colleagues as to the proper disposition of this case. The following is a statement of their opinion: "Under the facts of this case the insurance policy sued on had become absolutely null and void at the time of decedent's death. It is conceded that the loan on the policy, with the accrued interest thereon, had exhausted every particle of its cash value. It is conceded that more than thirty days of grace during which the premium might have been paid had elapsed prior to the death of the insured. It is true that under the terms of the policy, after the expiration of the thirty days of grace allowed for payment of the premium, the insured was still entitled to another thirty days in which he might exercise his choice of claiming any one of the three options provided for by the policy under which any reserve value remaining in the policy would be applied. Under the terms of the policy, if such choice was not exercised within the period of such additional thirty days, the second option provided for by the policy would be automatically put in operation. This can not mean, however, that if the policy had no reserve value, and had become absolutely dead by virtue of the insured having failed to pay the premium within the thirty-day period of grace allowed, the policy might still be kept in force in order that the insured might choose one of three options, when he was entitled to the exercise of no option at all.

"The policy provides also that a failure to pay any loan or interest thereon shall not avoid the policy unless the total indebtedness to the company shall equal the cash surrender value at the time of such failure, nor until one month after notice shall have been mailed by the company to the insured. This provision of the policy with reference to a forfeiture of a live policy for nonpayment of a loan or interest thereon would not seem to have any possible application in a case where the policy having no reserve value had already become null and void on account of the failure of the in-

sured to pay a premium within the period of grace provided. After the policy had become lapsed on account of the failure of the insured to pay the premium within the period of grace allowed, the only right of the insured, under the terms of the policy, was to apply whatever cash value it might then have according to the option of his choice. If it had no cash value, there was nothing to apply, and the policy became absolutely null and void. The provision with reference to the forfeiture of a live policy on account of the nonpayment of a loan or of interest therein could not have reference to a policy already dead on account of a failure to pay a premium as required, and could not be construed as being intended to give to the insured the right to create a cash value by repaying a past-due loan on a dead policy.

"The provision 'all or any part of such loan may be paid at any time' would seem, in view of other stipulations, merely to give to the insured the right of payment before maturity. But even assuming that during the thirty-days period intervening next after the period of grace the insured might have paid the loan and thus have created in the policy a value, as to which he might have exercised one of the options provided for, or as to which, in the absence of his election, option 2 would have become automatically operative, the fact remains that the insured died without paying such loan, when its payment certainly was a condition precedent to the revival of any rights which he may have had under the policy at the time of his death. Under the facts as they existed at that time, the fixed rights of the parties were such that the policy was exhausted, and on the insured's death no cause of action arose against the company in favor of the beneficiary."

My own opinion, being a dissent from the views of the majority, is as follows: On the 5th day of March, 1927, the following question in this case, with a statement of facts containing the foregoing provisions of the policy, was certified to the Supreme Court: "Upon the death of the insured on February 13, 1921, which occurred without the insured having exercised any of the options mentioned in the policy, and without having paid the loan against the policy, which was equal to the cash surrender value, and without having paid the premium due on January 7, 1921, the period of grace for the payment of which had expired on February 7, 1921, was the policy in force for its full face value, or for its full face value less

the unpaid premium and the loan, or had the policy lapsed and become of no value?"

The Supreme Court, in an opinion dated February 18, 1928, on the authority of *Southern Exchange Bank* v. *First National Bank,* 165 *Ga.* 289 (140 S. E. 753), refused to answer this question, and by an order dated March 20, 1928, returned the case to this court. *Hally* v. *Standard Life Ins. Co.,* 165 *Ga.* 838 (142 S. E. 147). The question is therefore before this court for determination.

The able and learned counsel for the defendant insurance company insist that under the terms of the policy it had lapsed and ceased to be of any validity or effect whatsoever upon the failure of the insured to pay the premium due thereon before the expiration of the last day of grace, namely, February 7. They rely upon that provision of the policy which provides that "failure to pay any premium . . in full within the period allowed for said payment by the policy . . shall cause the insurance thereunder to cease and determine ipso facto immediately save as herein otherwise specifically provided." If this clause were not modified and restricted in a manner favorable to the insured by other provisions of the policy which this clause itself, by the expression "save as herein otherwise specifically provided," recognizes as containing modifications of its provisions, the insistence of the insurance company that by the terms of the policy it had lapsed and ceased to be of any force whatever prior to the death of the insured would contain some merit. It is, however, elsewhere in the policy provided, that, for a period of thirty days after the last day of grace allowed for the payment of the premium, the policy "may be surrendered, . . and upon such surrender" the insured has the right to elect to take paid-up, or term insurance, or to withdraw the cash surrender value, provided the policy possesses any net cash value, after a deduction of the indebtedness due by the insured under the policy, which can be paid as net cash surrender value. The lapsing of the policy, for nonpayment of the premium and before the expiration of the grace period for the payment of the premium, would not, by virtue of the clause providing for the cessation and termination of the insurance on nonpayment of the premium, "save as herein otherwise specifically provided," operate to void the policy as an existing contract of insurance, unless the other provisions of the policy, when construed most favorably to the

insured, including that authorizing, upon the exercise of the options contained in the policy, a continuance of the insurance, demand such a construction. Since, under the terms of the policy, the insured, during the thirty-days period after the policy had lapsed for nonpayment of the premium, could "surrender" the policy and, by applying the net cash value over and above any indebtedness outstanding against the policy, take certain options provided therein, the policy clearly, during this period, afforded to the insured certain contractual rights, and was therefore not entirely dead. During this period, after the policy had "lapsed," if it possessed any net cash value, it possessed some life, and, upon the exercise during this period of certain options by the insured, could by its terms be *"continued"* in force as a valid contract of insurance. Since, during this period, after the policy has lapsed, the insured is given the right to "surrender" the policy and elect to take one of the options provided for in the policy, which election, when made, will, by the terms of the policy, operate to "continue" the insurance in force for a term extending beyond this thirty-day period, it does not appear unequivocally that the insurance, if the policy possessed any net cash value, had ceased to exist upon the 7th of February, the date upon which the policy had "lapsed," but on the other hand it clearly appears, from the provisions of the policy, that the insurance provided for therein would have *"continued"* in existence for thirty days after the 7th of February, the date upon which the policy had lapsed, and was subject to be further *"continued"* in existence for a term beyond the thirty-days period expiring March 9, upon election by the insured to exercise an option contained in the policy. It would seem that the clear import of the policy is to continue in force existing insurance under a live policy, rather than to afford to the insured the right to make a new contract for insurance or to revive a policy that is dead. It would seem, therefore, that, upon the death of the insured on February 13, within this thirty-days period, irrespective of whether he had exercised any of the options contained in the policy, if it had possessed any net cash value, the policy would have been in force for its full face value, subject, of course, to any indebtedness chargeable against it. The insurance company could not have forced the insured to accept the net cash value of the policy. Certainly, therefore, the company could not retain the net cash value and claim, upon the death of

the insured within this thirty-days period without having made an election to which he was entitled, that the policy at the time of his death was of no force whatsoever and that the beneficiary therein would be entitled to nothing.

Had the insured, at any time between February 7 when his policy had "lapsed"for nonpayment of the premium and the date of his death on February 13, elected to apply the cash value of the policy towards the purchase of extended insurance in the full value of the policy, as he could have done under the terms of the policy, provided no loan was against the policy, he would have purchased insurance which would have extended and continued, not from the date of the election by him, but from February 7, the date which terminated the period for which premiums had been paid. This being true, the insured necessarily had been protected by insurance at the full face value of the policy during this period from February 7 to the date of his election. If the insured had not been so protected, the insurance company, by accepting his money for extended insurance from the date when the policy had lapsed on February 7, would have given him nothing for his money. Had there been no loan on the policy, it would seem, therefore, that during this period from February 7 to the date of the death of the insured, even though no election had been made by him to purchase with the cash value of the policy extended insurance, the policy was in existence for its full value.

But it is replied that, during this thirty-days period from February 7 to March 9 (during which, the defendant claims, the policy had lapsed for nonpayment of the premium within the grace period), if the insured had undertaken to avail himself of his right under the policy to purchase with the cash value continuing or paid-up insurance, he could not have done so, because, the loan having absorbed the entire cash value in the policy, there was no cash value available for the purchase of continuing or paid-up insurance. This may be true, but it does not necessarily follow therefrom that, if a policy without a loan upon it and with a cash value available to purchase continuing or paid-up insurance possesses some life as a subsisting contract, a policy, with a loan upon it equal to and absorbing the entire cash value of the policy and with no cash value available to purchase insurance, was absolutely dead and possessed no life whatever.

Besides, the policy contains a provision that a "loan may be repaid at any time." Construing this provision most favorably to the insured, as must be done, the insured certainly would have a right to repay the loan "at any time" when its repayment would operate to give him an advantage under the policy. Certainly its repayment at any time, within the thirty-days' period from February 7 to March 9, after the policy had on February 7 lapsed for, nonpayment of the premium, and during which thirty-days period the insured could, with the cash surrender value, if it is not offset by a loan on the policy, purchase continuing or paid-up insurance, would give the insured a distinct advantage over the condition in which he finds himself with the loan unpaid. With the loan paid, he can, under the terms of the policy, with the cash surrender value, purchase continuing insurance for a period at the full face value of the policy. With the loan, which is equal to the cash surrender value, unpaid, he could purchase no insurance whatsoever.

If the policy, without a loan upon it, is, during this period, not dead, it follows that if the policy, by reason of the existence of a loan upon it equal to the cash value of the policy, becomes dead, the death of the policy is due to the existence of the unpaid loan. The policy expressly provides that a failure to pay any loan upon the policy will not void the policy, where the "total indebtedness to the company shall equal or exceed the cash surrender value," as is the case here, until one month after notice to the insured. It does not appear from the evidence that any such notice was ever given to the insured. The policy, therefore, can not be treated as void for nonpayment of the indebtedness represented by the loan.

During the thirty-days period from February 7 to March 9, after the policy had on February 7 "lapsed" for nonpayment of premium, the insured, without exercising the right to elect to apply the cash value of the policy to repayment of the loan, as he had a right to do, had a live and subsisting policy of insurance. He had a policy under the terms of which he could, by making an election as provided for therein, continue the policy in force at its full face value for a limited period, but beyond the thirty-days period expiring March 9, or, by a failure to elect within this thirty-days period, a policy which would "be continued automatically," at a reduced amount, as paid-up insurance, until his death. Since the insured on the date of his death, the 13th day of February, within this

632

thirty-days period during which under the terms of the policy he could elect to continue his insurance, had a valid and subsisting contract of insurance, which, by electing to pay the loan, he could have continued in force at its face value, the policy, at the time of his death, without his having made this election, should necessarily be valid in some amount. If by election, before he died, he could have continued the policy in force at its full face value, the policy, which at the date of his death constituted a valid and subsisting contract of insurance, should, construing it most favorably to the insured, be considered as in force at the time of his death for its full face value, subject to any indebtedness lawfully chargeable against it, as the loan and the past-due premium.

The plaintiff, as a matter of law, was entitled to recover under the policy, and the trial judge, in passing upon both questions of law and fact, erred in finding for the defendant.

 *Judgment affirmed. Jenkins, P. J., and Bell, J., concur. Stephens, J., dissents.*