## BACH v. WESTERN STATES LIFE INS. CO.
### No. 374.

Circuit Court of Appeals, Tenth Circuit.
July 6, 1931.

H. L. Mulliner, of Salt Lake City, Utah, for appellant.

Frank A. Johnson, of Salt Lake City, Utah (Charles C. Dey, A. L. Hoppaugh and Robert E. Mark, all of Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The plaintiff (appellant) was denied recovery on a $5,000 policy of insurance issued on May 10, 1915, on the life of her husband, who died on May 27, 1927. The defense was that the policy lapsed on July 2, 1925. The facts are agreed.

The policy is the ordinary "old-line" life policy, with reserve values. It provides:

"The consideration for this insurance and all benefits hereunder shall be the declarations, answers and agreements made in the application for this policy, which is made a part hereof, and the payment of One hundred and Eighty-two and 00/100 Dollars in advance before this contract shall take effect, as the premium for an insurance terminating on the Tenth day of May, 1916.

"In consideration of the said application and the payment to the Company of a like amount in the succeeding years, at the Home Office of the Company on or before the same days, or upon the presentation of a receipt for the said amounts signed by the Secretary of the Company and countersigned by an authorized agent of the Company, this contract shall be renewed and continued as an ordinary life policy, subject to all of the provisions herein.

"If any premium shall not be paid on or before the date when due, the liability of the Company hereunder shall be only as hereinbefore provided."

The policy includes a table of guaranteed reserve values which sets out the "Cash or Loan Value," the "Paid-up Insurance" and the "Automatic Term Insurance" at the end of each policy year commencing with the second. As to loans, the policy provides that the company will advance, on request and on the sole security of the policy, an amount up to the cash value of the policy; that such loan shall bear interest at five per cent. payable at the end of each policy year. It provides:

"Failure to repay any such advance or to pay interest shall not avoid this policy unless the total indebtedness hereon to the Company shall equal or exceed the cash value at the time of such failure, nor until one month after notice shall have been mailed by the Company to the last known address of the Insured or of the Assignee of record, if any, at the Home Office of the Company."

It further provides:

"If any indebtedness to the Company on account of this policy shall exist at the time the above values become available, such indebtedness shall reduce the amount of the said loan, cash or paid-up values, or shall shorten the extended insurance period, which values or period shall then be adjusted on the basis originally used in their calculation.

"Any indebtedness to the Company, including any balance of the premium for the insurance year remaining unpaid, will be deducted in any cash settlement of this policy

or will reduce, proportionately, any other benefit thereunder."

While the policy gives the insured three options as to his reserve values, it provides that—

"If any premium shall not be paid on or before the date when due, the full amount of insurance hereunder will, without action upon the part of the Insured, automatically continue from said due date as term insurance, during the term, including the period of grace, specified in column three of the accompanying table."

At the end of the eighth policy year, the policy carried a cash value of $825 and an extended insurance for 7 years and 204 days (which extends beyond the date of the death of the insured). However, on June 9, 1922, the insured availed himself of the loan provisions of the policy and borrowed $601.80, and executed a loan agreement by which the insured agreed—

"To pay said Company interest on said loan at the rate of 5 per cent. per annum, payable in advance from this date to the next anniversary of said policy, and annually in advance on said anniversary and thereafter.

"To pledge, and do hereby pledge, the value of said policy as sole security for the payment of said loan and interest."

"That said loan shall become due and payable (a) Either if any premium on said policy or any interest on said loan is not paid on the date when due, in which event said pledge shall, without demand or notice of any kind, every demand and notice being hereby waived, be foreclosed by satisfying said loan in the manner provided in said policy."

The premium of $182, due May 10, 1923, was never paid, notwithstanding the company sent the insured eight notices of the delinquency. Neither did the insured pay any part of the principal or interest of the loan of $601.80. On June 11, 1923, the company charged the then due and unpaid loan of $601.80 against the reserve value of $825; the balance of $223.20 was applied to automatic term insurance which expired July 2, 1925, which was two years prior to the death of insured. If the company had the right to charge this note against the reserves on the policy, which was the sole security for the loan, the trial court was right. If it did not have such right, then plaintiff is entitled to recover.

■ The action of the company was in accord with the contract of the parties. The loan agreement provided that the loan should become payable if any premium, or interest on the loan, was not paid when due, which was (including the grace period) June 10, 1923. The agreement further provides that in that event, notice and demand is waived, and the pledge foreclosed by satisfying the loan as provided in the policy. The policy provides that such indebtedness shall reduce the amount of the reserve values "or shall shorten the extended insurance period" and that "any indebtedness * * * will reduce, proportionately, any benefit" under the policy. Moreover, such action is in accord with sound and settled insurance practices. By paying premiums for eight years, the insured built up a reserve of $825. He could take this in cash, or he could purchase extended insurance for a term, or he could purchase a paid up policy for a limited amount. What he did was to take $601.80 in cash, and use the balance to purchase term insurance. The prayer of the plaintiff is that she be entitled to take the reserve in cash and also have its value in extended insurance. This is contrary to the agreement of the parties, and no insurance company could exist that paid out its reserves twice.

Plaintiff relies, to sustain this unusual contention, largely upon the clause of the policy which provides that the policy shall not be avoided for failure to pay a policy-loan, unless (a) the loan and interest exceeds the cash value of the policy nor (b) until after a month's notice to the insured. This clause has no application to the facts in this case, because the policy was not avoided for failure to pay the policy-loan; the policy, in the true sense, was not avoided; the policy provided for certain rights of the insured in event he ceased paying premiums; he did cease paying premiums and he has had his rights. But if we consider the policy as being "avoided", it was the nonpayment of the premium and not the policy-loan that resulted in the avoidance. The loan was paid by charging it against the reserve. Reading the entire policy, the purpose of this clause is clear. The accruing interest on a policy-loan might equal the reserve value of the policy between premium paying dates. It would be manifestly unfair to avoid the policy on the date the accruing interest equalled the reserve values without giving notice to the insured. No such situation is here presented.

■ The plaintiff cites several cases in support of her contention; we have examined them, and in our opinion they may be distinguished from the case at bar; but if they

are not distinguishable, then we must decline to yield to their authority, for this court is committed to the proposition that where the provisions of a contract are clear and unambiguous, the parties must abide thereby. Chase v. Business Men's Assurance Company (C. C. A. 10) 51 F.(2d) 34; East & West Insurance Co. v. Fidel (C. C. A. 10) 49 F.(2d) 35; Order of United Commercial Travelers of America v. Edwards (C. C. A. 10) 51 F.(2d) 187. In support of the conclusion at which we have arrived, see New York Life Ins. Co. v. Slocum (C. C. A. 3) 177 F. 842; Pacific Mutual Life Ins. Co. v. Davin (C. C. A. 4) 5 F.(2d) 481; Meridian Life Insurance Co. v. Hobbs, 200 Ala. 487, 76 So. 429, L. R. A. 1918A, 904; Rife v. Union Central Life Ins. Co., 129 Cal. 455, 62 P. 48; Hally v. Standard Life Ins. Company, 38 Ga. App. 623, 144 S. E. 674; Mills v. National Life Insurance Co., 136 Tenn. 350, 189 S. W. 691; Rye v. New York Life Insurance Co., 88 Neb. 708, 130 N. W. 434; Alabama National Life Ins. Co. v. Smith, 214 Ala. 585, 108 So. 524; Black v. Franklin Life Ins. Co., 133 Ga. 859, 67 S. E. 79.

Plaintiff undertakes to deflect the force of these authorities by asserting that "This policy contains no provision that the policy shall be terminated for nonpayment of premiums." The policy contains the usual provisions according to the insured the right to keep the policy alive by the payment of premiums, and defining his rights in event of failure to pay renewal premiums. And, of course, the regular payment of premiums is the very essence of the agreement. Mr. Justice Bradley, in New York Life Ins. Co. v. Statham, 93 U. S. 24, 30, 23 L. Ed. 789, said:

"But whilst this is true, it must be conceded that promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the premiums when due, but on compounding interest upon them. It is on this basis that they are enabled to offer assurance at the favorable rates they do. Forfeiture for non-payment is a necessary means of protecting themselves from embarrassment. Unless it were enforceable, the business would be thrown into utter confusion. * * * The case, therefore, is one in which time is material and of the essence of the contract. Non-payment at the day involves absolute forfeiture, if such be the terms of the contract, as is the case here."

To the same effect, see Klein v. Insurance Company, 104 U. S. 88, 26 L. Ed. 662; Thompson v. Insurance Company, 104 U. S. 252, 26 L. Ed. 765; Iowa Life Insurance Company v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204.

The judgment is affirmed.