## MAYERS v. MASSACHUSETTS MUT. LIFE INS. CO.
### No. 6345.

District Court, E. D. New York.
Jan. 16, 1935.

I. Jack London, of New York City (Jay Leo Rothschild, of New York City, of counsel), for plaintiff.

Cabell, Ignatius, Lown & Blinken, of New York City (James M. Lown and Joseph S. Catalano, both of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This case comes before this court on a motion made by defendant to dismiss the complaint herein, under rule 113 of the Rules of Civil Practice of the state of New York, on the ground that this action has no merit, for the reason that the policy which is the subject-matter of this action lapsed without value for the non-payment of a premium due thereon, September 19, 1932.

So much of rule 113 of the Rules of Civil Practice of the state of New York as is necessary for consideration reads as follows:

"1. To recover a debt or liquidated demand arising on a contract express or implied in fact or in law, sealed or not sealed. * * *

"The complaint may be dismissed or answer may be struck out and judgment entered in favor of either party on motion upon the affidavit of a party or of any other person having knowledge of the facts, setting forth such evidentiary facts as shall, if the motion is made on behalf of the plaintiff, establish the cause of action sufficiently to entitle plaintiff to judgment, and if the motion is made on behalf of the defendant, such evidentiary facts, including copies of all documents, as shall fully disclose defendant's contentions and show that his denials or defenses are sufficient to defeat plaintiff, together with the belief of the moving party either that there is no defense to the action or that the action has no merit, as the case may be, unless the other party, by affidavit or other proof, shall show such facts as may be deemed by the judge

hearing the motion sufficient to entitle him to a trial of the issues. If upon such motion made on behalf of a defendant it shall appear that the plaintiff is entitled to judgment, the judge hearing the motion may award judgment to the plaintiff, even though the plaintiff has not made a cross motion therefor."

This procedure is available to litigants in the federal courts by virtue of the Conformity Act (28 USCA § 724). Mac-Namara & Wadbrook Trading Co. v. Royal Ins. Co. (D. C.) 288 F. 985; Maslin v. Columbian Nat. Life Ins. Co. (D. C.) 3 F. Supp. 368; S. M. Hess & Bro. v. Small (D. C.) 288 F. 995.

The facts as set forth in the moving papers are undisputed, and the answering affidavits raise no issue of fact and the question before this court therefore is solely one of law.

The facts briefly stated are as follows:

Policy No. 948,181 was issued by defendant, Massachusetts Mutual Life Insurance Company, to one Adolph H. Mayers, in the sum of $25,000, on the 19th day of March, 1930. The annual premium payable for this policy was $1,821, and the first premium payable for this policy was $1,821, which was paid in cash at the time of issuance. In his application the assured, Adolph H. Mayers, which application is made a part of the policy, elected (a) to pay the premium on this policy annually in advance (No. 16 of application); (b) to have dividends applied in reduction of premium (17 of application); (c) extended term insurance as the nonforfeiture provision (18 of application). The original beneficiary at the time of the issuance of this policy was the insured's wife, Pauline Mayers. On May 6, 1930, at the request of the insured, the beneficiaries were duly changed to Pauline Mayers, the wife, and Sadie Millard, William Mayers, Natalie Green, Arthur Mayers, Bertram Mayers, and Sidney Mayers, children of the insured, equally. The plaintiff is one of the beneficiaries named, and brings this action against the defendant for what he alleges is his share of the $25,000 policy, which he contends the company should have kept in force up to and after April 1, 1934, the date of the insurer's death.

Plaintiff in his complaint recites certain provisions of the policy without quoting them, in paragraphs fourth, fifth, and sixth, and in the seventh paragraph alleges that the assured duly paid the premiums on said policy for a period of two years and six months, and that the assured made default in payment of the quarterly premium due on the 19th day of September, 1932. In paragraphs eighth and ninth the plaintiff charges that the defendant "wrongfully gave notice to the assured that said policy lapsed without any value whatsoever therein remaining for the benefit of the assured," and that as a consequence of this notice the assured was induced and led to believe that all his rights and benefits to said policy ceased and terminated upon the assured's default in payment of the premium due in September, 1932, and also led the assured to believe that the selection by him of participating extended term insurance as the automatic nonforfeiture option in case of default would be idle and futile, thus wrongfully preventing and/or dissuading said assured from making a selection of participating extended term insurance as the nonforfeiture option as aforesaid. By the ninth paragraph he further alleged that by reason of the foregoing, the defendant waived the requirement that the assured select participating extended term insurance, and that accordingly no election of participating extended term insurance in case of default in the payment of premiums was necessary, and that said option became theretofore technically operative without further act on the part of the assured on the 19th day of September, 1932, the due date of the premium in default.

These allegations of paragraphs eighth and ninth require no extended consideration in the face of the application which became part of the policy of insurance, as the assured had chosen by 15 of the application automatic premium loan, by 17 of the application that dividends be applied in reduction of premiums, and by 18 of the application extended term insurance as the nonforfeiture provision desired.

Therefore the only question vital to this case which need be considered is whether upon the failure to pay the premium due September 19, 1932, the policy lapsed without value.

This is a question to be determined by the terms of the policy.

For the purpose of this motion, the following facts are conceded:

That policy No. 948,181, dated March 19, 1930, was issued by the defendant insuring one Adolph H. Mayers, in the sum of $25,000.

That premiums were duly paid on this policy for two and one-half years, that is, until September 19, 1932.

That the insured Adolph H. Mayers borrowed from the defendant on said policy from time to time to pay a portion of these premiums until September 19, 1932, when the insured was indebted to the defendant for such loans with interest in the sum of $1,999.44, and as of October 20, 1932, the last day of grace, said insured was indebted to the defendant in the sum of $2,009.

That the cash surrender value of the said policy on September 19, 1932, and on the last day of grace, was the sum of $2,009.

That by No. 18 of the application, the insured chose extended term insurance as his nonforfeiture provision in case of default in payment of premium.

That neither the premium nor any part thereof due on September 19, 1932, was paid.

That the insured died on or about April 1, 1934.

Plaintiff contends that defendant was obliged to use the full cash surrender value of the policy without deduction of loans to purchase extended term insurance as of September 19, 1932, and that if this had been done the insurance so extended would have been in force on April 1, 1934, when the insured died, and plaintiff as a beneficiary would have been entitled to his share thereof. Defendant on the contrary contends that the policy lapsed without value on September 19, 1932, with the possible exception of the sum of $9.56, which was the net cash surrender value on September 19, 1932, which would have purchased extended insurance but for a few days, and that on the last day of grace there was no cash surrender value as the cash surrender value on that day was $2,009, and the indebtedness to the defendant for loans on said policy was $2,009.

In the policy we find the following provision: "If any premium is not paid before the expiration of the grace period, and if no provision for automatic payment is then applicable, the policy will lapse and the Company's liability, if any, shall be as set forth hereinafter (See Non-Forfeiture Provisions)."

The premium due September 19, 1932, was never paid. Therefore the policy must have lapsed unless it was kept alive by the nonforfeiture provisions of the policy which allow the insured three options in case of default and which options are inserted in life insurance policies pursuant to statutes in various states, that of the commonwealth of Massachusetts being chapter 175, § 144, G. L. (Ter. Ed.), and that of the state of New York being section 88 of the New York Insurance Law, chapter 28 of the Consolidated Laws.

As the assured elected in his application the option of extended term insurance, that is the only one that requires consideration, and as to that the policy provides in the second paragraph of options in case of default: "* * * The extended term insurance shall continue the insurance in force from the due date of the premium in default for its original amount and any outstanding paid-up additions less any indebtedness to the Company hereon, but without the right to loans."

The fourth paragraph of options in case of default provides: "The value stated in the accompanying table are for even years. If there are outstanding paid-up additions to the policy, the values will be increased, but if there is any indebtedness to the Company hereunder, the said values will be diminished. If the default occurs after a fractional part of the current year's premium has been paid, the values will be proportionately adjusted."

In the first paragraph of the nonforfeiture provision, under basis of premiums and reserves, it is provided: "The premium and reserves under this policy are based upon the American Experience Table of Mortality and interest at the rate of three per cent. per annum."

In the note at the foot of the tables we find this provision: "The values in the above table are based upon the American Experience Table of Mortality and interest at the rate of three per cent. per annum. * * * The paid-up value, or extended insurance value, at the end of any policy year, is the mathematical equivalent of the cash value."

It is also to be noted that at the top of the table of values, the headings of the tables are paid-up insurance or cash value or extended term insurance.

I have considered the argument of the plaintiff with care, especially in view of the fact that he contends that the argument here made on his behalf was not made in the case of Massachusetts Mut. Life Ins. Co. v. Jones (C. C. A.) 44 F.(2d) 540.

Extended term insurance is defined in 14 R. C. L. pages 990 and 991, as follows: "Statutes now exist in several jurisdictions providing that on default in the payment of premiums after a policy has been in force a certain time, the policy shall not lapse but shall continue in force for a time either stated or equal to the amount of term insurance that the reserve applicable to the policy, taken as a single premium, will purchase, or shall become a paid-up policy for the amount of paid-up insurance which such reserve would purchase."

And again, at page 995, we find: "While it has sometimes been held that in computing the sum available for extension purposes the amount of loans on the policy cannot be deducted, the better view seems to be that from the net reserve should be deducted policy loans and the surplus used as a single premium. * * *"

In this case we have no concern with dividend accumulations, as there were none under this policy.

In construing this policy, as all other instruments, it must be read as an entire instrument to ascertain its meaning. All of the clauses with reference to the nonforfeiture provisions have a close relation to each other and must be read together. It hardly seems possible that all the provisions could be placed in one clause, and it is only by attempting to set each clause by itself, without relation to any of the others, that the contention of ambiguity can even be raised.

It is clear to me that a change in the cash value changes the other values, as the cash value is the basis for the other values, and constitutes the single net premium for the purchase either of paid-up insurance or extended term insurance.

I find that the proper construction of the policy is, first, that the indebtedness against the policy is to be deducted from the face of the policy if there is extended term insurance, thereby decreasing the amount of the risk; second, that the indebtedness due to the company on the policy must be deducted from the amount of the cash surrender value, which is the same as the amount available for the purchase of extended term insurance, and extended term insurance shall be purchased only for the time which the difference between the cash surrender value and the indebtedness to the company on the policy will purchase.

In the instant case the indebtedness to the company on September 19, 1932, when the premium became due, was $1,999.44, the cash surrender value was $2,009, and the balance of $9.56 would have purchased extended term insurance for only a few days. On the thirty-first day after September 19, 1932, to wit, October 20, 1932, the last day of grace, the cash surrender value was $2,009, and the indebtedness on the policy was $2,009.

The insured died April 1, 1933, and the cash surrender value or the reserve, less the indebtedness on the policy from which extended term insurance could have been purchased, was insufficient to have purchased extended term insurance to the date of the death of the insured.

Plaintiff also contends that the following clause of the policy applies, and that the notice required there not having been given, prevents the avoidance of the policy by defendant:

"Failure to repay a policy loan or premium loan, or to pay interest thereon, shall not avoid the policy unless the total indebtedness thereon including accrued interest shall equal or exceed the loan value at the time of such failure, nor until thirty-one days after notice has been mailed by the Company to the last-known address of insured and of any assignee of record at the Home Office of the Company."

This clause has nothing whatever to do with this case. Mills v. National Life Ins. Co., 136 Tenn. 350, 189 S. W. 691; Neighbors v. Union Central Life Ins. Co., 17 Tenn. App. 612, 69 S.W.(2d) 618, at page 620.

The company has not, nor does it now claim that the policy was avoided by failure to repay a policy or premium loan, but simply by reason of failure to pay a premium when due. This is in entire accord with that provision of the policy which provides: "If any premium is not paid before the expiration of the

grace period, and if no provision for automatic payment is then applicable, the policy will lapse and the Company's liability, if any, shall be as set forth hereinafter. (See Non-Forfeiture Provisions.)"

The plaintiff argues at length in an effort to show ambiguity in the terms of the policy.

Sufficient to say, I find none.

The cases cited by plaintiff on that point require no consideration.

See Williams v. Union Central Life Ins. Co., 291 U. S. 170, at page 180, 54 S. Ct. 348, 352, 78 L. Ed. 711, 92 A. L. R. 693, in which the Supreme Court by Mr. Chief Justice Hughes said: "As there is no ambiguity in the provisions under consideration, there is no occasion for resort to the familiar principle that equivocal words should be construed against the insurer. While it is highly important that ambiguous clauses should not be permitted to serve as traps for policyholders, it is equally important, to the insured as well as to the insurer that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

My construction of the policy in this case is sustained by the great weight of authority. Hawthorne v. Bankers' Life Co., 63 F.(2d) 971 (C. C. A. 8); Bach v. Western States Life Ins. Co., 51 F.(2d) 191 (C. C. A. 10); Pacific Mut. Life Ins. Co. v. Davin, 5 F.(2d) 481 (C. C. A. 4).

Every question raised on this argument was decided adversely to the plaintiff's contention by the Circuit Court of Appeals of the Fourth Circuit on exactly the same type of policy, issued by the same company, in Massachusetts Mut. Life Ins. Co. v. Jones, 44 F.(2d) 540, and I am in entire accord with the reasoning and decision in that case, and will follow it.

The point has also been passed upon adversely to plaintiff's contention in Moss v. Ætna Life Ins. Co. (C. C. A. 6th Circuit) 73 F.(2d) 339, opinion by Circuit Judge Simons, November 7, 1934.

The same question has been decided adversely to plaintiff's contention in the New York state courts. Schultz v. State Mutual Life Assurance Company of Worcester, Mass., 153 Misc. 246, 274 N. Y. S. 601, affirmed 242 App. Div. 614, 271 N. Y. S. 1062.

The plaintiff is not entitled to any recovery against the defendant herein.

The defendant's motion is granted and the complaint dismissed, with costs to the defendant against the plaintiff.

Settle order on notice.