H. SHEINER, INC., Plaintiff, *v.* MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, INC., Defendants.

City Court of New York, New York County, October 26, 1937.

*Nachamie & Benjamin* [*Max Nachamie* of counsel], for the plaintiff.

*Cabell, Ignatius & Lown* [*Joseph Catalano* of counsel], for the defendant.

MADIGAN, J. These are cross-motions for summary judgment. There is no dispute as to the facts.

Defendant issued a joint ordinary life insurance policy in the sum of $15,000, insuring the lives of Henry Sheiner and Emanuel Adolph.

Henry Sheiner died January 22, 1937.

In December, 1936, the policy had lapsed for non-payment of premium. Plaintiff, the beneficiary, says it is entitled to paid-up insurance in the sum of $3,168, less $2,039.70, the $2,039.70 being the amount of loan indebtedness against the policy when it lapsed.

Plaintiff contends that, according to the provisions of the policy, paid-up insurance was in effect at the time of the death of Henry Sheiner. No paid-up additions resulted from dividends; for, in conformity with the dividend option chosen, dividends were applied in payment of premiums. However, the option chosen in case of default was for reduced participating paid-up insurance and to that source plaintiff looks for the paid-up insurance alleged in the complaint to be payable to the beneficiary.

Defendant contends that plaintiff is entitled to no paid-up insurance, inasmuch as, when the policy lapsed for non-payment of premium, the indebtedness of $2,039.70, against the policy for premium loans, had arisen. That indebtedness was at the time of lapse equal to the cash surrender value.

Plaintiff argues that the meaning of policy provisions is such that at the time of lapse the indebtedness for premium loans should have been set off against the corresponding amount of paid-up coverage indicated by a table which is a part of the non-forfeiture provisions of the policy. That amount is more than the indebtedness. Therefore, it is contended by plaintiff that paid-up insurance is in effect. The table will be referred to again in this memorandum. Defendant asserts that it had the right, when the policy lapsed, to set off the indebtedness against the cash value and that as, after so setting off the indebtedness, there remained no cash value, there was no paid-up insurance pursuant to the option to take paid-up insurance in case of default.

The beneficiary insists that it should have summary judgment but contends that, at worst, plaintiff is entitled to a ruling that the pertinent provisions of the policy are ambiguous and that, accordingly, as plaintiff says, the beneficiary is, at worst, entitled to a ruling on these motions that there is a question of fact.

According to plaintiff, it is not clearly provided that, in case of lapse for non-payment of premium, indebtedness against the policy shall reduce the amount of paid-up insurance in such proportion as the indebtedness bears to the cash value at the time of lapse. If that was intended by defendant, plaintiff says the company "should have said so in plain language."

The policy provides that

"Upon default in the payment of any premium after two full annual premiums have been paid hereon, this policy will be binding upon the Company as participating paid-up insurance of a reduced amount  *  *  *

"The participating paid-up insurance shall be payable at the same time and on the same conditions as in the original contract.  *  *  *

" The values stated in the accompanying table are for even years. If there are outstanding paid-up additions to the policy, the values will be increased, but if there is any indebtedness to the Company hereunder, the said values will be diminished. If the default occurs after a fractional part of the current year's premium has been paid, the values will be proportionately adjusted.

" If this policy becomes paid-up, or if extended term insurance is taken hereunder, the insurance will have a cash surrender value."

The " accompanying table " is arranged in columns, indicating cash values, amounts of paid-up insurance, and amounts of extended term insurance, should extended term insurance be the non-forfeiture provision adopted. Each amount stated corresponds to the end of a year subsequent to the first year.

At the foot of the table there is a paragraph reading: " The values in the above table are based upon the Makehamized American Experience Table of Mortality (Hunter's) and interest at the rate of three per cent. per annum. A deduction of one per cent. of the amount insured has been made from the reserve in computing the values for the second year, but no deduction has been made in computing the values for subsequent years. The paid-up value, or extended insurance value, at the end of any policy year, is the mathematical equivalent of the cash value."

In and of itself the expression " mathematical equivalent of the cash value " may, for present purposes, readily be conceded to be of obscure meaning, even ambiguous; and so also may other language of the policy, language now pertinent.

However, it will be seen from the foregoing that plaintiff in effect contends that the indebtedness against the policy could be paid with something other than cash or its equivalent. That this is not so appears from the contract taken in its entirety. It could not reasonably be inferred from the policy as a whole that an indebtedness against the policy could be paid other than by cash or its equivalent. This conclusion has been reached after considering the matter from two different points of view.

(1) The policy is the contract. The objects and purposes of the contract and of its various provisions must be taken to be the objects and purposes which the ordinary buyer of such insurance coverage reasonably would understand to be expressed by what is actually set forth.

If from the entire contract all but one of several possible interpretations lead to results contrary to the result obviously intended in a particular situation, the interpretation which alone leads to the result intended must be adopted. In such a case there is no question of fact as to intent.

The policy is written on a printed form prepared for varied use. Paid-up insurance is referred to in the " options in case of default." It is referred to as well in the dividend options which appear in the form. One of the several dividend options, from which election must be made, is the choice of having dividends " used to purchase participating paid-up additions." This is mentioned because it throws light on the provision, quoted above from the printed form, which reads, in part, " If there are outstanding paid-up additions to the policy, the values will be increased, but if there is any indebtedness to the Company hereunder, the said values will be diminished." In this instance, as indicated above, the election was to have dividends applied in reduction of premiums, but the form is prepared for general use.

Debts are ordinarily paid in cash or its equivalent. If paid-up insurance was to be offset against a present debt, no offset reasonably could be expected which would be greater in amount than the present value of the unmatured insurance. If life insurance is to remain financially sound the obligations of life insurance companies to their policyholders must be paid for and must remain adequately supported by policy values and reserves. (See *Perry* v. *Prudential Ins. Co.*, 144 App. Div. 780, at p. 783, and the opinion of ADLERMAN, J., in *Miller* v. *John Hancock Mutual Life Ins. Co.*, 154 Misc. 316.)

(2) Approaching the question as to the meaning of the policy from another angle it will be noted that the first clause of the " non-forfeiture provisions " reads as follows: " Basis of Premium and Reserves — The premium and reserves under this policy are based upon the Makehamized American Experience Table of Mortality (Hunter's) and interest at the rate of three per cent per annum."

This is in addition to what is set forth in the foregoing from the provisions at the end of the table mentioned above.

It is apparent that the non-forfeiture option chosen for this policy relates to paid-up insurance computed, as to amount, on the basis stated in the policy. If there had been a net cash value at the time of lapse, there would have been paid-up insurance in some amount, for such cash value would pay for paid-up insurance in some amount. Cash value is regarded as an equivalent of cash. Perhaps a beneficiary could find a business man who would accept the policy at its cash value for merchandise or in payment of an indebtedness of equal amount. The beneficiary could not, however, expect to find a business man who, taking over the policy, would credit unmatured insurance coverage, for any stated amount, in payment of a debt for such amount. Nevertheless, plaintiff

is contending in effect that the parties to this insurance contract intended that an amount of unmatured insurance coverage should be accepted as the equivalent of an equal amount of cash. To such interpretation common sense is an effectual barrier.

Plaintiff seems to assume that the table, set forth under the heading " non-forfeiture provisions," states the amount of paid-up insurance which will actually be in force at the end of each year while the policy is in effect. In that regard, what the table does show is the amount of " paid-up insurance " " upon default in the payment of premium." The table merely shows the basis, " cash value," and the result, in paid-up insurance or in extended term insurance, of the computation based on unimpaired cash value, at the end of the several years mentioned. There would have been paid-up additions had it been elected to have dividends applied to the purchase of paid-up additions; but the assumption that, at all times, after completion of the second year, paid-up insurance is in effect is erroneous; and it has led plaintiff into unsound arguments. It is not true that defendant illegally attempted to forfeit without notice paid-up insurance. Cash value, which might have supported paid-up insurance, diminished as loans were made and indebtedness accumulated. Finally that base, cash value, was extinguished by indebtedness. " Values " " diminished " by " indebtedness " manifestly are cash values and not the coverage which would be proportional to the actual cash value.

This plaintiff would convert a lapsed policy without cash value into something of value.

The table indicates the amount of paid-up insurance which will go into effect, on default at stated times, if the stated amount of cash value remains unimpaired to support the corresponding amount of paid-up insurance. Cash value clearly is intended to be the basis on which there may rest the other amounts, shown in the table. Without cash value the " mathematical equivalent " is nothing.

(3) A further point is raised by the beneficiary.

Plaintiff refers to a loan certificate, another printed form for varied use, relating to a loan against this policy. In that certificate it is provided, in effect, that, if at any time the total indebtedness against the policy shall equal the cash value of the policy and of all paid-up additions, the policy may be avoided by notice of thirty-one days. In passing it might be noted that the reference in the loan certificate is to cash value of paid-up additions. This is illuminating. The language of the loan certificate indicates that indebtedness is not to be set off against the amount of paid-up additions. It may be set off against the cash value of paid-up additions. As already indicated, the dividend option chosen did not

result in paid-up additions though the printed form, for general use, sets forth an option which might have been chosen and which would have resulted in paid-up additions. To resume, the loan certificate provides for the thirty-day notice " at any time " when present value comes down to the amount of indebtedness, whereas the time limitation after non-payment of premium expires at the end of the grace period and not " at any time." There is no conflict.

(4) The reasoning in *Mayers* v. *Massachusetts Mutual Life Ins. Co.*, ([D. C.] 11 F. Supp. 80; affd., on opinion of CAMPBELL, J. [C. C. A.] 77 F. [2d] 1007) is applicable here, though in that case participating extended term insurance was the option selected in the event of default. (See, also, the cases cited in *Mayers* v. *Massachusetts Mutual Life Ins. Co.*, [D. C.] 11 F. Supp. 80.)

(5) There is no ambiguity such as to affect the disposition of these applications.

(6) Plaintiff's motion for summary judgment is denied.

Defendant's motion for summary judgment is granted. Order signed.