FLORENCE    B.  MILLS  *v.*  NATIONAL  LIFE  INSURANCE
COMPANY.

(*Knoxville.*   September  Term,  1916.)

1. **INSURANCE.  Life insurance.  Loans.  Necessity of notice.**

Where a policy provided that it could not be declared forfeited·
for failure of the assured to pay interest on a loan without one
month's notice, and that premium notes would be accepted
and should constitute a lien on the policy as fully as if ac-
companied by proper assignment thereof, the effect of the last
provision is that a month's notice to assured is necessary be-
fore forfeiture for default in payment of interest, either upon
a loan by premium note or by assignment of the policy.  (*Post.*
*pp.* 358, 359.)

2. **INSURANCE.   Default.   Extended insurance.**

Where a policy provided that any indebtedness to the company
would be deducted from the cash value and reduce the amount
at risk under continued insurance, and that the policy should
become null and void on one month's notice of default in pay-
ment of interest on such indebtedness, but that it should lapse
on failure to pay a premium, and the insured failed to pay a
premium when due, being indebted to almost the full cash
loan value of the policy, the policy lapsed, and the extended
term insurance provided therein could not take effect further
than in the amount the difference between the indebtedness
and the cash loan value would purchase.  (*Post, pp.* 359-362.)

3. **INSURANCE.   Life insurance.   Loans.   Necessity of notice.**

Where premium notes given by insured were payable on de-
mand, but further provided that lapse of contract would be
sufficient cause for cancellation without notice, the note was pay-
able only on demand as long as the policy was kept alive by
payment of premiums, but on default thereof the policy could

be canceled without notice, the company to apply the cash value to pay the note. (*Post, pp.* 362, 363.)

4. **INSURANCE.  Life insurance.  Conditions of policy.  Compliance with statute.**

A policy of life insurance, providing for payment of premiums in advance, declaring cash loan value, and providing three options on default of payment of any premium, is not in violation of Acts 1907, chapter 457, relating to clauses which shall not be included in insurance policies. (*Post, pp.* 363, 364.)

Acts cited and contrued:  Acts 1907, ch. 457.

Cases cited and approved:  Imperial Fire Ins. Co. v. Coos, 151 U. S., 452;  Kavanaugh v. Ins. Co., 117 Tenn., 56;  First Nat. Bank v. Ins. Co., 95 U. S., 673.

5. **INSURANCE.  Life insurance.  Payment of premiums.  Necessity of notice.**

Where the policy fixes definitely the amount of the premium and the time of payment, the insurer is under no obligation to give the insured notice of the amount and maturity of the premium, in the absence of a statute or express or implied agreement to do so, or course of conduct making such notice necessary. (*Post, pp.* 364, 365.)

Case cited and approved:  Thompson v. Life Ins. Co., 104 U. S., 252.

6. **INSURANCE.  Life insurance.  Payment of Premiums.  Necessity of notice.  Course of conduct.  Evidence.**

A statement of the general manager of the insurer that he had sent insured no notice of maturity of premium and interest payments, and that he could not say whether the local agent had sent such notice, but presumed that he had, is too indefinite to show a course of conduct, rendering necessary the giving of such notice before declaring forfeiture of the policy. (*Post, pp.* 365, 366.)

Case cited and distinguished:  Ins. Co. v. Hyde, 101 Tenn., 404.

FROM KNOX.

Appeal from the Chancery Court of Knox County. —WILL D. WRIGHT, Chancellor.

WILLIAMS & LANCASTER, for appellant.

WRIGHT & JONES, for appellee.

MR. M. G. EVANS, Special Judge, delivered the opinion of the Court.

This was a suit filed in the chancery court of Knox county against the National Life Insurance Company of Vermont, to recover upon two policies of life insurance, for $5,000 each, issued upon the life of Charles H. Mills, and payable at his death to Florence B. Mills, his wife, who was complainant below.

The assured held two other policies for like amounts in the same company, about which there was no contest at his death, and, same having been paid, are not involved in this lawsuit.

The two policies here in controversy were issued on May 14, 1908, and the annual premium on each was $138.45. The assured paid six successive annual premiums on each of the policies, but failed to pay the premium due on May 14, 1914, and died on October 15, 1914.

The two policies involved in this case are alike in all respects, and are treated in the record as if they constituted one policy for $10,000. They provide that at the end of the sixth year, and after six annual premiums have been paid, the two together should have a cash value of $1,017. In other words, at the end of the sixth year, when the assured failed to pay his premium, he had an equitable property right in the policies to the extent of the sum mentioned, and he was given the option of using that sum, subject· to the provision with regard to indebtedness, in any one of‍ three different ways according to his election, namely: (1) He could receive the sum in cash; or (2) he could take paid-up insurance on the two policies for $2,010; or (3) he could take continued insurance thereon for $10,000 for a period of seven years and one hundred and eighty-four days, without paying further premiums; and, if the assured made no election, the last option under the terms of the policy went into effect automatically; that is, the continued insurance for seven years and one hundred and eighty-four days.

It appears in this case that the assured made no election under the above option, and, since he died just five months after the last premium was due and unpaid, it is the insistence of the complainant that the continued insurance was in full force and effect, and that therefore the company is liable in this suit.

136 Tenn.23

The defense of the insurance company is that the policy lapsed by reason of the failure to pay the premium due May 14, 1914, and that for several years prior to his death, the assured had each year borrowed of the company, in the form of premium loans, certain amounts of money, which, if for any reason the policy were allowed to lapse, operated, under the terms of the contract, it it is insisted, to reduce the cash value of the policy to $10.11, and to reduce the amount of continued term insurance to the sum of $99, which sum the company offered to pay complainant before suit was filed, and which it paid into court with its answer.

It appears that the assured had, on the 14th day of May of the years indicated, made the following premium loans: In 1910 one loan of $211; in 1911 two loans of $101 each; in 1912 two loans of $138.45 each; in 1913 two loans of $131 each; the aggregate amount of said loans being $949.90, which, with one year's unpaid interest thereon, made a total sum of $1,006.89. This was the indebtedness of the assured to the company on May 14, 1914, the date upon which he failed to pay his last premium.

It further appears that these sums were borrowed, not by assignment of the policies to the company, but upon certain notes executed by the assured, all alike in form, and designated in the record as premium notes. It also appears from the record that some time in August or September, 1914, the company charged the above indebtedness, namely $1,006.89,

against the surrender or cash value of said policies, which was $1,017, leaving a balance to the credit of the policies of $10.11, as above stated. The actuary department then figured the amount of insurance which $10.11 would purchase for a term of seven years and one hundred and eighty-four days, and his calculation showed the amount to be $99.

It does not appear from the record that any notice was given the assured of the action which the company proposed to take, and did take, further than that contained in the policy and in the notes; nor does it appear that any demand was made upon assured for the payment of either principal or interest upon the above-mentioned indebtedness, evidenced by premium notes. It is the insistence of the company that it made the above-mentioned loans upon the condition, as expressed in the face of the notes, as well as in the terms of the policy, that it should have the right to take the action which it did take, without reference to any notice to or demand upon the assured.

The provisions of the policy relating to the questions in controversy are as follows:

"*Nonforfeiture.* (a) On failure to pay any premium or any part thereof, or any premium note or interest thereon, when due, this policy, except as otherwise provided herein, shall immediately lapse; if, however, lapse occurs after three full years' premiums have been paid, the owner of the policy shall be entitled, at the end of successive policy years, to one

of the settlements specified in the following table, which are: First, without action of the insured, nonparticipating continued term insurance for $5,000 for the specified term; or second, on application and legal surrender of this policy within three months, a nonparticipating paid-up policy; or third, on application and legal surrender of this policy within three months, a cash value.

"Table of Continued and Paid-Up Insurance and Cash or Loan Values.

| "At end of. | Continued Insurance. | Paid-Up Insurance | Cash or Loan Values. |
|---|---|---|---|
| 6th year | yrs. 184 days | 1005 | $508.50 |

"(d) Any indebtedness to the company, unless otherwise provided in this policy, will be, deducted from the cash value and will also proportionately reduce the sum of paid-up insurance and the amount at risk under continued insurance.

"*Loans.* After three full annual premiums have been paid, the company will loan upon the sole security of this policy while continued in force, and upon receipt by it of this policy duly assigned, up to the limit secured by the above specified cash or loan values at the end of the policy year within which application for the loan is made. The rate of interest on such loan shall not exceed six per cent. per annum and if such interest be not paid, when due, it shall be added to the principal until the limit of said

cash surrender value has been reached, whereupon, if then the interest be not paid, the policy shall become null and void, but not until one month after notice shall have been mailed by the company to the last known address of the person to whom the loan was made and of the insured and any assignee.

"*Premium Payments.* All premiums, both first and renewal, are payable in advance at the home office or to an agent of the company upon delivery, on or before date due, of a receipt signed either by the secretary or actuary of the company and countersigned by said agent. Notes for premiums will be accepted on the sole signature of the insured, provided this policy be not duly assigned, so long as the free loan value of the policy is sufficient security therefor, and such notes will be a lien on the policy as fully as if executed by all persons having an interest therein and accompanied by proper assignment thereof.

"*Reinstatement.* In case of lapse of this policy, provided it has not been surrendered to the company, it may be reinstated at any time on written application thereof, and the payment of all its premium arrears and reinstatement or payment of any indebtedness existing at the date of original default, with interest not exceeding six per cent. per annum, and provided satisfactory evidence of insurability is supplied.

"*Settlement.* Any indebtedness to the company on account of this policy, including any deferred premiums for the uncompleted policy year, will be

deducted in any settlement of this policy as a claim by death.''

The chancellor entered a decree in favor of the complainant for the full amount of the policies, with interest thereon, less the indebtedness of the assured to the company, with interest, and less the $99 paid into court. From this decree, the insurance company has appealed to this court, and insists, by proper assignment of error, that the decree of the chancellor was erroneous, and that the $99 which it offered to pay was the full amount of its liability to appellee.

The determinative question in the case is as to whether appellant had the right to deduct the above-mentioned indebtedness from the cash or surrender value of the policy without first having given the assured specific notice of such intended action, or without having made demand upon him for the payment of said indebtedness.

It is clear that the policies lapsed, upon failure of assured to pay the premium which fell due on May 14, 1914, and could be reinstated only in the manner provided in the policy. But upon this lapse, aside from the question of indebtedness, the policies had a cash value of $1017. The question is, what steps, if any, were necessary for the company to take under the terms of the policy, in order rightfully to pay said indebtedness out of this cash or surrender value.

The only provision in the policy, relating to giving notice to the insured, is that which provides that the

policy may not be declared forfeited by the company for failure of assured to pay interest on a loan, without first having given the assured one month's notice. This occurs in the "Loans" clause above quoted, which states that a loan may be made "upon the sole security of the policy" and upon receipt by the company "of this policy duly assigned;" that the rate of interest shall not exceed six per cent. per annum, and that "if such interest be not paid when due . . . the policy shall become null and void, but not until one month after notice shall have been mailed," etc.

The above-quoted provision has application only to a loan made by assignment of the policy, but the next succeeding clause, headed "Premium Payments," provides that premium notes will be accepted, provided "this policy be not duly assigned," and that "such notes will be a lien upon the policy as fully as if . . . accompanied by proper assignment thereof," and we think the effect of the latter provision is that a month's notice to the assured would be required before the company could declare the policy forfeited for default in payment of interest either upon a loan by premium note, or upon a loan by assignment of the policy.

So far as the terms of the policy itself are concerned, it is upon the provision just mentioned, relating to default in payment of interest, that learned counsel for appellee base their contention that the

company was obliged to give notice to the assured before taking the action it did.

But the reply of appellant is that the policy was not declared forfeited by reason of the default in payment of interest, and therefore the above provisions about notice have no application here.

The company insists that it was wholly unnecessary to declare the policy forfeited for default in the payment of interest, and that this was not done because the policy lapsed under its very terms by the failure of assured to pay the annual premiums due on May 14, 1914. And that the question is not whether the company had the right to declare the policy lapsed for failure to pay interest, but whether, after the policy had lapsed by reason of failure to pay the annual premium, the company was then required to give notice, or make demand upon the assured before it could deduct the indebtedness of $1,006.89 from the cash or surrender value of $1,017, and use the balance to purchase extended insurance. In determining this question it is necessary to look to the terms of the policy itself, and, upon a careful examination thereof, we find no provision in said policy requiring the company to give such notice or make such demand.

With reference to "any indebtedness" to the company the policy, as quoted above, provides that:

"Any indebtedness to the company, unless otherwise provided in this policy, will be deducted from the cash value and will also proportionately reduce

the sum of paid-up insurance and the amount at risk under continued insurance."

It is "otherwise provided" that where there is no lapse of the policy, and the assured should die, the indebtedness would be deducted in the settlement made upon the amount called for in the face of the policy. This is contained under the heading "Settlement."

We do not find any provision of the policy whereby it could be contended that continued insurance in the full amount could exist, and an indebtedness be outstanding at the same time. When the policy lapses it becomes, so to speak, in liquidation under its terms, and if the reserve or cash value has been withdrawn, there is no fund left to pay for continued insurance during the extended term, and therefore the extended term insurance fails to take effect. This is necessarily sound insurance business.

The assured must have known that he had anticipated the cash value of his policies, and had withdrawn the only fund with which continued insurance was to be purchased, and must have known that when the policy lapsed, the said indebtedness under the terms of the policy would be deducted from the cash value. This was the condition under which the policy provided he was entitled to make the loan. He could not withdraw the money which he had paid in, and at the same time insist upon the insurance which that money would buy if left in cash to the credit of his policy.

As above stated, we find no provision of the policy by which the company agrees to make demand for the payment of this indebtedness upon lapse of the policy by the insured; on the contrary, one provision of the policy specifically states that "any indebtedness" will be deducted from the cash value, and where there has been a lapse as in this case, it is nowhere "otherwise provided."

It is argued, however, that the notes executed by the assured, may be looked to upon this question. Said notes are in the following form:

"Montpelier, Vt., May 14, 1913. $130.00.

"On account of premium due this date on the contract No. 204226 issued on my life I promise to pay the National Life Insurance Company, or order, on demand, at its office in Montpelier, Vt., one hundred and thirty dollars, with interest at the rate of six per centum per annum, from the date hereof, payable on the anniversary of the insurance next succeeding, and thereafter annually with the premium payment; and this note shall be a lien on said contract until fully paid.

"It is further understood and agreed that default in interest, or lapse of the contract, will be accepted as sufficient cause for cancellation without notice and in event of such default or lapse, the application of so much of the cash value as is necessary for the payment of this note and accrued interest is hereby authorized.

[Signed] CHARLES H. MILLS."

Attention is called to the fact that the notes are made payable "on demand." This is true, but they contain the further express provision that the note shall be a lien on said contract until fully paid, and that:

"Default in interest, or lapse of the contract, will be accepted as sufficient cause for cancellation without notice, and in the event of such default or lapse, the application of so much of the cash value as is necessary for the payment of this note and accrued interest is hereby authorized."

In other words, as long as the policy was kept alive by the payment of annual premiums, the note was payable only upon demand made; but when a lapse of the contract occurred, that should be sufficient cause for cancellation without notice, and operated itself as a demand under the very terms of the note, and the company in the event of such lapse was authorized to apply the cash value to the payment of the note. This provision is a reiteration of the terms of the policy on this subject.

We are not unmindful of the rule that where policies of insurance contain inconsistent provisions, or are so framed as to be fairly open to construction, that view should be adopted, if possible, which is most favorable to the insured. *Imperial Fire Insurance Co.* v. *Coos,* 151 U. S., 452, 14 Sup. Ct., 379, 38 L. Ed., 231; *Kavanaugh* v. *Insurance Co.,* 117 Tenn., 56, 96 S. W., 499, 7 L. R. A. (N. S.), 253, 10 Ann. Cas., 680; *First National Bank* v. *Hartford F. Insurance*

*Co.*, 95 U. S., 673, 24 L. Ed., 563. But in this case we think the provisions of the policy are plain, and cannot be said to be inconsistent or ambiguous. Nor is the policy in any way in conflict with chapter 457 of the Acts of 1907; on the contrary, its provisions are in accord with said act.

Counsel for appellee also call attention in their brief to the fact that appellant did not show in the record that a premium notice had been sent assured before the last premium fell due on May 14, 1914. It is not contended there is anything in the record indicating that assured did not receive such notice, but the point made by counsel is that the appellant should have affirmatively shown that such notice was sent.

We are of opinion, however, that it was not obligatory upon the company to affirmatively prove this, unless the appellee had first shown such a course of conduct between the company and the assured as to make that proof necessary. Where the policy fixes definitely the amount of the premium and the time of payment, the insurance company is under no obligation to give the insured notice of the amount and maturity of such premium, in the absence of a statute or an express or implied agreement to give the same. 3 Cooley's Briefs on Insurance, 2281, and cases cited; *Thompson* v. *Life Insurance Co.*, 104 U. S., 252, 26 L. Ed., 765. If a course of dealing between the company and the assured had been shown, establishing a uniform and reasonably long-continued custom to send assured such premium notices, then it

might be contended with much reason that it was incumbent upon the company to prove the sending of such notice. But this state of facts does not appear in the record.

The only testimony relating to this subject at all is in the cross-examination of the witness Putnam, chief clerk in the secretary's department, in answer to questions relating to interest notices, as follows:

"Q. Was there any demand made on Mr. Mills to pay the interest on these seven notes on the policy anniversary, May 14, 1914?

"A. I should presume there was, through the regular premium and interest notices sent out from Mr. Thompson's office.

"Q. There was none from your office here?

"A. None from our office.

"Q. And as to his you wouldn't know?

"A. Of course I couldn't tell on that."

Mr. Thompson, referred to by the witness, was manager for the company at Chattanooga, Tenn.

The witness does not undertake to testify that any notice was ever sent to the assured, much less that a custom was established between the parties. In fact, his testimony indicates that such notices were not sent from the home office, and that he could not know what was done in Mr. Thompson's office in Chattanooga. The subject was pursued no further in the record, and no attempt was made to show a custom of sending the assured such premium notices.

In *Insurance Co.* v. *Hyde*, 101 Tenn., 404, 48 S. W.,

970, this court used the following language as quoted from 2 Joyce on Insurance, section 1332:

"If a life insurance company has been in the practice of notifying the insured of the time when the premium will fall due, and of the amount, and the custom has been so uniform and so reasonably long in continuance as to induce the assured to believe that a clause for forfeiture for nonpayment will not be insisted on, but that the notice will precede the insistence upon the forfeiture, and the insured is, in consequence, put off his guard, such notice must be given," etc.

And the rule as thus laid down was approved in *Kavanaugh* v. *Insurance Co.*, 117 Tenn., 33, 96 S. W., 499, 7 L. R. A. (N. S.), 253, 10 Ann. Cas., 680.

The record in this case, however, does not seem to have been made upon the theory that the question of a custom to send premium notices to the assured was an issue in the case. Certainly the testimony above quoted, from the cross-examination of the witness Putnam, is too indefinite under the authorities to show a course of conduct between the parties that would establish such a custom.

We are unable to find in this record where the company breached or failed to carry out any agreement made with the assured in the policies under consideration, and we find no ground upon which appellee may predicate liability against it in excess of the $99 paid into court by the appellant. It results, therefore, that the decree of the chancellor must be reversed, and the bill dismissed, at the cost of appellee.