Zimmerman, J.
 

 In support of her right to recover, the beneficiary takes the position that since the policy had been in force for more than three years, even though the indebtedness of the insured to the company equalled or exceeded the cash or loan value of the policy, the company could not, upon the failure of the insured to pay the loan when due, summarily declare the policy void, having failed to give the month’s notice stipulated under the “loan” clause of the policy; that the failure to give such notice continued the insurance in force until the insured’s death, at which time the beneficiary had the right to demand and receive the difference between the face amount of the
 
 *477
 
 policy and the indebtedness of the insured to the company. The beneficiary further contends that the loan, evidenced by a note secured by an assignment of the policy, constituted an ordinary pledge of the policy and that consequently the company had no more than a lien on the policy, which required it to take affirmative action to show that the pledge was in fact foreclosed, such action in the instant case necessitating the month’s notice to the insured.
 

 On the other hand, the company maintains that the policy lapsed for failure to pay the premium and that it was not summarily declared void for failure to pay the loan; that since the amount of the insured’s loan equalled or exceeded the cash value of the policy, there was no value left to continue it in force; that the policy consequently did not and could not continue in the form of extended insurance, and that it therefore ceased to be effective on January 22, 1932, at the end of the grace period of thirty-one days in which the premium might be paid. Consequently, the policy terminated solely on account of non-payment of the premium, and not because of any cancellation for nonpayment of the loan; hence no notice under the “loan” clause was appropriate or required.
 

 To reach a conclusion in this case, the policy must be interpreted in connection with the undisputed facts. The policy was issued on September 21, 1920, and was in full force and effect on August 19, 1931, when the insured was granted and received a loan thereon from the company, amounting to the full cash or loan value of the policy as of December 21, 1931, receiving also the dividend credits to which he was entitled. As it had the right to do, the company deducted all interest on the loan to December 21,1931, and the quarterly premium on the policy up to that time. Therefore, on December 21, 1931, we find the insured owing the loan and a quarterly premium to March 21, 1932. However, he paid nothing on either premium or loan. Time went
 
 *478
 
 on and January 21, 1932, arrived, without word or payments of any kind from the insured, and this was the date upon which the grace period for paying the quarterly premium expired.
 

 In order to discover the effect of a contingency of this kind, we turn to the policy under the clause headed “Option on Surrender or Lapse”, and find that when the policy has been in force three full years the insured, within thirty-one days after any default, has three options and upon failure to elect among them within such period, the insurance will be “continued in force from date of default * * * for the sum insured, including any outstanding dividend additions, less any indebtedness to the Company”, as provided in option (b).
 

 Therefore, to determine the basis upon which the policy will continue, its cash or reserve value is computed “less any indebtedness to the Company ’’. When such procedure is followed in the instant case it is found that the indebtedness to the company equalled or exceeded the cash or reserve value of the policy and that there was nothing left upon which to continue it in force. The loan had exhausted the reserve which otherwise would apply to keep the policy alive. Here the insured, through his own actions in making a loan to the limit of the cash or reserve value of the policy, and thereafter failing to pay the premium or any part of the loan, created a condition whereby the policy lapsed on January 22, 1932, and was of no force or effect after that date. Of course, the payment of the premium is the very essence of a contract of insurance, and the instant policy provides that “the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable. *' * *”
 

 But the beneficiary says the above result cannot occur; that under the “loan” clause of the policy, failure to repay a loan shall not void the policy until one month
 
 *479
 
 after notice shall have been mailed by the company to the last known address of the insured, and that eoncededly no such notice was sent to Walter F. Hines.
 

 The next inquiry then is, does the part of the loan clause referred to have any application to a case like this?
 

 We have reached the conclusion that it does not. It seems clear that such notice would be required before any cancellation of the policy could be made in a situation where an insured having a policy-loan has paid his premium, but before the time has arrived for paying the next premium the loan with interest equals or exceeds the cash or loan value of the policy. That, however, is not our problem. Here, no cancellation of the policy took place for failure to pay the loan. Because of the failure to pay the premium, a lapse occurred, bringing into operation another and independent clause of the policy, under which no notice to the insured was required.
 

 This precise question has been before the courts of other jurisdictions under policies containing provisions of substantially the same wording as those.involved in the present case.
 

 In
 
 Hawthorne
 
 v.
 
 Bankers’ Life Co.,
 
 63 F. (2d), 971, 972 (C. C. A., 8), the statement is made: “ ‘The policy provides that on default in the payment of any premium the policy shall become void except in so far as extended insurance is automatically purchased by the then surrender value less any indebtedness. The loan provision of the policy # * * does not negative or modify the provision touching defaults. That provision does not say that failure to pay a premium shall not avoid the policy, it says Only that failure to repay a loan shall not avoid the policy “unless the total indebtedness, including accrued interest, shall equal or exceed the cash value of the policy” in which case the policy becomes void after thirty days notice. Between these two provisions there is no inconsistency. Failure to
 
 *480
 
 pay a premium avoids the policy, failure to repay a loan may not avoid it or, under certain circumstances, it may avoid it.
 

 “ ‘Of course, all related provisions of a contract are to be read to get at the full meaning of one of them but these two provisions are wholly and obviously unrelated. They have to do with different subject matters.’ ”
 

 When the question was before the court in
 
 Pacific Mut. Life Ins. Co. of California
 
 v.
 
 Davin,
 
 5 F. (2d), 481, 483 (C. C. A., 4), it remarked: “The administrator says * * * the policy was still in force, because it provides that failure to repay a loan or interest thereon ‘shall not avoid this policy unless the total indebtedness thereon to the company shall exceed the cash surrender value at the time of such failure, nor until thirty-one days after notice of such fact shall have been mailed by the company to the last known address of the insured and of the assignee, if any, from the home office of the company.’ It is admitted that no notice of forfeiture for the nonpayment of the note was ever sent, nor was any required. The policy was not forfeited for the nonpayment of the note. What happened was that the premium fell due on the 2d of June, 1923. It was not paid at that time, nor during the 31 days of grace. Entirely irrespective of whether a note was outstanding or not, the insured had the right to elect any one of the three options given him by the policy, and upon his failure so to elect, automatically the policy for itself elected the third option, and then for the first time the fact that he owed any money on the note properly entered into consideration. His policy was to be extended for such time as could be paid for by the cash surrender value after all indebtedness due by him was deducted from it. It so happened that when the indebtedness due by him was deducted from the cash surrender value of his policy, the result was a minus quantity, and he was not entitled to any exten
 
 *481
 
 sion at all. This is a very different situation from that contemplated by the policy provision relied on by the administrator.”
 

 Again, the question was presented in
 
 Bach
 
 v.
 
 Western States Life Ins. Co.,
 
 51 F. (2d), 191, 192 (C. C. A., 10), and the court said: “Plaintiff relies * * * upon the clause of the policy which provides that the policy shall not be avoided for failure to pay a policy-loan, unless (a) the loan and interest exceeds the cash value of the policy nor (b) until after a month’s notice to the insured. This clause has no application to the facts in this case, because the policy was not avoided for failure to pay the policy-loan; the policy, in the true sense, was not avoided; the policy provided for certain rights of the insured in event he ceased paying premiums; he did cease paying premiums and he has had his rights. But if we consider the policy as being ‘avoided’, it was the nonpayment of the premium and not the policy-loan that resulted in the avoidance. The loan was' paid by charging it against the reserve. Beading the entire policy, the purpose of this clause is clear. The accrued interest on a policy-loan might equal the reserve value of the policy between premium paying dates. It would be manifestly unfair to avoid the policy on the date the accrued interest equalled the reserve values without giving notice to the insured. No such situation is here presented.”
 

 A very late expression of the same tenor is found in
 
 Moss
 
 v.
 
 Aetna Life Ins. Co.,
 
 73 F. (2d), 339, 340 (C. C. A., 6), the court saying: “Provisions of policies touching loans similar to or identical with the’ one here considered have been construed in a number of the federal Judicial Circuits. It has uniformly been held that the loan and forfeiture provisions do not modify or in any way affect the avoidance of the policy for failure to pay premiums thereon. When there is a failure to pay a premium when it is due, the policy becomes void, except for the automatically extended insurance, but,
 
 *482
 
 where there is no reserve or loan value in the policy, it having been exhausted by the discharge of an indebtedness thereon, ‘the loan agreement and all its incidents * * # became non-existent — a chapter finished and closed.’ ”
 

 Similar language and like holdings on facts approximately akin are found in the following cases:
 
 Palmer
 
 v.
 
 Central Life Assur. Soc.,
 
 ... Minn., ..., 258 N. W., 732;
 
 Penn Mutual Life Ins. Co.
 
 v.
 
 Fiquett,
 
 229 Ala., 203, 155 So., 702;
 
 Mills
 
 v.
 
 National Life Ins. Co.,
 
 136 Tenn., 350, 189 S. W., 691;
 
 Neighbors
 
 v.
 
 Union Central Life Ins. Co.,
 
 17 Tenn. App., 612, 69 S. W., (2d), 618. See, also,
 
 Schoonover
 
 v.
 
 Prudential Life Ins. Co.,
 
 187 Minn., 343, 245 N. W., 476;
 
 Dibrell
 
 v.
 
 Citizens Nat. Life Ins. Co.,
 
 152 Ky., 208, 153 S. W., 428;
 
 Rye
 
 v.
 
 New York Life Ins. Co.,
 
 88 Neb., 707, 130 N. W., 434;
 
 Adams
 
 v.
 
 Mutual Life Ins. Co.,
 
 76 Ind. App., 598, 132 N. E., 688;
 
 Great Southern Life Ins. Co.
 
 v.
 
 Kirkpatrick
 
 (Tex. Civ. App.), 48 S. W. (2d), 759;
 
 Hally
 
 v.
 
 Standard Life Ins. Co.,
 
 38 Ga. App., 623, 144 S. E., 674;
 
 McCall
 
 v.
 
 International Life Ins. Co.,
 
 196 Mo. App., 318, 193 S. W., 860; 3 Couch on Insurance, 2092, 2095, Section 647a.
 

 Counsel for defendant in error place much reliance on the case of
 
 Carter
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 264 Pa., 505, 107 A., 847, the first paragraph of the syllabus of which reads: “Where the insured, under a life policy, secures from the company a loan amounting to the full cash value of the policy as of the date when the next annual premium became due, and dies after that date without having paid either the loan or the premium, the executor may recover the face value of the policy less the loan and unpaid premium, where it appears that the policy provided that a failure to repay a loan with interest ‘shall not avoid the policy unless the total indebtedness hereon to the company shall equal or exceed such loan value at the time of such failure, and until twenty-one [thirty-one] days after notice shall have been mailed by the company
 
 *483
 
 to the last known address of the insured/ and it appears that no such notice was ever given by the company.” In the opinion the court observes: “We find nothing in the wording of the policy indicating an intention in ease of default after granting a loan to apply the proceeds of the policy to the payment of the indebtedness. * * * Had the insurer intended that, in case of default, the cash value of the policy should be applied to cancel the indebtedness and the policy thereby terminate if the latter equalled the former, it would have been a simple matter to have said so. In absence of such provision, the court will not read into a policy a requirement it does not contain. ’ ’
 

 In
 
 Jeske, Admx.,
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 113 Pa. Super., 118, 126, 172 A., 172, 174, the court discusses the
 
 Carter case
 
 at some length and says: “The policy in the present case was issued the year after the Carter case was decided, and the defendant company profited by that decision to declare in the policy that 4 On surrender or default any indebtedness to the company under this policy will be deducted from the cash value.’ ”
 

 If the question in the instant case were presented to the Supreme Court of Pennsylvania on a policy such as is here involved, its probable attitude is suggested by the decision in
 
 Toncich
 
 v.
 
 Home Life Ins. Co.,
 
 309 Pa., 336, 163 A., 673, wherein it is said: £4When the payment of premiums ceased the policy lapsed; it was in effect in liquidation, and by its terms, certain rights arose in the parties. Mills v. Ins. Co., 136 Tenn., 350; Bach v. Western States Life Ins. Co., 51 Fed. (2d), 191. Under the automatic extension clause the insured could demand that the reserve on the policy, built up by the payment of premiums for four years, be applied to extend the full insurance. The period of extension was computed on the basis of reserve or cash value at the time of lapse, excluding any indebtedness. If there was any indebtedness on the policy, the insurer
 
 *484
 
 was entitled to liquidate it by charging it against this reserve value: Bach v. Ins. Co.,
 
 supra;
 
 Hawthorne v. Bankers Life Co., 52 Fed. (2d), 309. When an indebtedness is charged against the reserve or cash value of a lapsed policy the extended insurance as shown by the table is proportionately reduced.
 

 “The reserve or cash value of this policy on April 28,1929, was $324; the indebtedness was the $300 loan, leaving $24 to secure extended insurance. This sum, on the basis of the tables in. the policy, would extend the insurance for one year and eleven days, at the expiration of which period, insured being still alive, the policy ceased and determined. * * * Appellant’s contention would permit an insured to take, in the form of a loan, cash to the full amount of the reserve on his policy and still claim the benefit of the extended term which that reserve would have secured if left intact. This of course is contrary to the terms of the policy.”
 

 The insistence of counsel for defendant in error that the company had only a lien on the policy, which required foreclosure by way of notice to the insured, conflicts with the terms of the policy providing in effect that upon default in the payment of a premium “any existing indebtedness to the Company” shall be deducted in determining the cash or reserve value of the policy; its continuance in force depending upon the existence of any such value.
 

 This case has been given extended consideration because the questions presented are of first impression in this court. The matter has been approached with the admonition in mind that policies of insurance must be construed in favor of the insured or the beneficiary, in case of doubt. However, a court has no right to misconstrue a lawful policy of plain terms to give advantage to an insured or a beneficiary when he is not entitled to it. Diligent search of the authorities has been unproductive of bringing to light a case permitting a beneficiary, or one occupying an analogous position,
 
 *485
 
 such, as an administrator or executor, to recover under facts approaching in sameness the facts of the instant case.
 

 . We are brought' to the inevitable conclusion that the policy issued on the life of Walter F. Hines terminated on January 22, 1932, for failure to pay the premium thereon, and that the beneficiary was precluded from successfully maintaining an action against the insurance company on the policy.
 

 It follows that the judgment of the Court of Appeals is reversed and final judgment rendered for plaintiff in error.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Jones, Matthias and Day, JJ., concur.