MARY M. RICK, PLAINTIFF, RESPONDENT, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, MASS., DEFENDANT, APPELLANT.—93 S. W. (2d) 1126.

St. Louis Court of Appeals.   Opinion filed May 5, 1936.

*Joseph C. Hopewell* and *Raymond J. Lahey* for respondent.

*Leahy, Saunders & Walther* and *Lyon Anderson* for appellant.

BENNICK, C.—This is an action upon a policy of insurance which was issued on July 6, 1928, by defendant, the John Hancock Mutual Life Insurance Company of Boston, Massachusetts, upon the life of one Edwin G. Rick, the son of Mary M. Rick, the plaintiff herein, who brings this action as the beneficiary designated in the policy. The judgment rendered was for plaintiff for the sum of $1,927 (representing the face value of the policy of $2,000 less an indebtedness of $73 due from the insured to the company), together with interest upon the amount of the judgment from March 22, 1932, the date of the death of the insured. Defendant's appeal to this court has followed in the usual course.

The case was tried before the court alone upon an agreed statement of facts, and the issues as made up by the pleadings will be adverted to in connection with our decision of the points raised upon the facts.

It appears from the photostatic copy of the insured's application for the policy that he had elected to pay his annual premium in quarterly installments, one of which would fall due upon January 6 of each year. We mention this particular date because of the fact that it was the failure of the insured to have paid the premium installment due on January 6, 1932, either on or before such due date or within the grace period of thirty-one days thereafter, which was the occasion for defendant's contention that the policy lapsed for

nonpayment of premium as of that date. Such contention of course necessarily embraced the further contention that the policy, by reason of the total outstanding indebtedness of the insured to the company, had no cash surrender value as of that date with which to have purchased extended term insurance under the applicable nonforfeiture option included in the policy.

Such option, designated in the policy as Option C, provided that after two full annual premiums had been paid upon the policy, and if the payment of any subsequent premium or installment was in default for more than thirty-one days, then upon written request of the holder made within ninety days from the due date of the premium in default the policy would be continued in force at its face amount, including any outstanding additions and less any indebtedness to the company thereon or secured thereby, for its value in participating extended term insurance dating from said due date, said value to be computed upon the basis of the surrender value applied as a single net premium at the attained age of the insured.

As a matter of fact there was no request in writing or otherwise from the insured for his policy to be continued at its face amount for its value in extended term insurance, but inasmuch as the insured died within ninety days after January 6, 1932, the due date of his unpaid premium, without having exercised his election as between the three options provided in his policy, the right to elect survived to his beneficiary, which right was not thereafter qualified by the time limitation imposed by the policy as to the insured himself, nor was it essential that the beneficiary had made an express election prior to the institution of suit to have taken extended term insurance for the full face value of the policy rather than some lesser sum under either of the other options afforded by the policy. [Knapp v. John Hancock Mutual Life Ins. Co., 214 Mo. App. 151, 259 S. W. 862; Hampe v. Metropolitan Life Ins. Co. (Mo. App.), 21 S. W. (2d) 926.]

Defendant in fact concedes the present right of plaintiff to such extended term insurance for the full face value of the policy less any indebtedness thereon or secured thereby if, upon the insured's default in the payment of the last premium, there was any surrender value under the policy to be applied towards its purchase; and it is expressly agreed in the stipulation of facts that if what was otherwise the value of the reserve of the policy as of January 6, 1932, was not extinguished by reason of the outstanding indebtedness of the insured to the company as secured by his policy, then such reserve, if applied as a net single premium towards the purchase of extended term insurance, would have purchased insurance for the full value of the policy for a term which would have extended from January 6, 1932, to a date beyond the time of the death of the insured.

Now the outstanding indebtedness of the insured to the company which we have heretofore referred to came about as the result of a

loan made by the company to the insured upon the sole security of his policy.

Under the loan clause of the policy it was provided that at any time while the policy was in force, after two full years' premiums had been paid, the company would loan, upon the sole security of the policy, with interest at the rate of 6% per annum, payable upon each subsequent anniversary of the policy, a sum not exceeding the cash surrender value at the end of the then current policy year of the policy. It was further provided in such clause that any interest in default would be added to the principal of the loan.

Then followed a provision regarding the repayment of loans, which provision, because of the reliance which plaintiff places upon it and a corresponding provision in the loan agreement, we set out *in haec verba* as follows:

"The whole or any part of a loan may be repaid at any time. Failure to repay the loan or to pay interest thereon shall not avoid the policy while the indebtedness is less than the cash surrender value. When the indebtedness equals such value, the policy shall become void thirty-one days after notice has been mailed to the insured and any assignee."

On August 27, 1931, the insured borrowed from the company, under the above loan provision of his policy, the sum of $71.55, which, with interest thereon until January 6, 1932, was calculated to amount to $73, the full cash reserve under his policy as of said latter date. Contemporaneously with the making of such loan, which was made upon the sole security of the insurance policy, there was executed by and between the insured and the company a written loan agreement, the material portion of which was as follows:

"In consideration of the sum of seventy-three and no/100 dollars ($73.00) advanced by the John Hancock Mutual Life Insurance Company of Boston, Massachusetts, to Edwin G. Rick of St. Louis, Mo., as a loan on the sole security of Policy No. 1576035 on the life of Edwin G. Rick, said policy, with all sums of money now or hereafter due by virtue thereof, is hereby assigned and transferred to said company as security for the repayment of said loan, with interest at the rate for such loan established by the company when said policy was issued, payable on the next succeeding anniversary of the date of said policy and thereafter annually, it being agreed that any interest in default will be added to the principal of the loan.

"Whenever the total indebtedness to the company on said policy shall equal its cash surrender value, then in the event of failure to pay interest thereon, the policy shall become void thirty-one days after notice has been mailed to the insured and any assignee.

"In case of default in the payment of any premium or instalment thereof on said policy, the company may terminate said insurance, subject to any provisions of law or of the policy prescribing the con-

ditions under which this right may be exercised, and may deduct the indebtedness hereby secured from the amount which would otherwise be the surrender value of the policy, and apply the residue thereof, if any, to the purchase of paid-up or extended insurance, when such insurance is provided for by the terms of the policy, or pay it in cash if those entitled to receive it so elect."

As we have already pointed out, the premium of January 6, 1932, was not paid on or before said date nor within the period of grace allowed thereafter, nor did the insured make any payment to the company as of said date upon either the principal or interest of his loan. Because of the insured's default in the payment of his premium due January 6, 1932, the company thereupon appropriated and applied the full reserve of $73 under his policy to the repayment of his loan, which, with interest computed to said date, aggregated the sum of $73, as has heretofore appeared. It is conceded, however, that the company at no time gave the insured any notice of its intention to appropriate and apply the reserve of his policy to the repayment of his loan and interest as would have been necessary under the terms of both the policy and the loan agreement if it had been avoiding the policy because of the failure of the insured to have paid any interest due upon his loan.

Following the insured's death on March 22, 1932, the plaintiff herein made due proof of death and demanded the payment of the face of the policy less the indebtedness thereon, and upon defendant's refusal to make payment, the present action was thereafter instituted.

Plaintiff's theory, in brief, is that under the terms of the policy and loan agreement defendant could not appropriate the reserve under the policy to pay off the loan until thirty-one days after notice had been mailed by defendant to the insured; and that inasmuch as such notice was concededly not given, defendant is to be held to have elected to treat the loan as a personal obligation of the insured, the reserve was thereby relieved of its status as security for the loan, and the full amount of the reserve was left intact to be applied as a net single premium towards the purchase of extended term insurance for the full value of the policy.

Defendant contends, on the other hand, that there is properly no question of notice in the case, the giving of notice being required only where the company elects to forfeit the insurance upon the failure of the insured to pay the interest on his loan when his indebtedness equals the reserve under his policy; that in this instance the company did not attempt to forfeit the policy by reason of any failure on the part of the insured to have paid the interest due upon his loan; that instead the policy merely lapsed for nonpayment of a current premium due; and that inasmuch as the total indebtedness of the insured, which was to be deducted in such event from the surrender value of the policy, was equal to the whole of such surrender value,

there was no value remaining under the policy with which to have purchased the extended term insurance for which plaintiff sues in this action.

While the precise question at issue seems to be one of first impression in our jurisdiction, it is by no means a new one in many other jurisdictions; and in the case of contracts of the character of the one now before us has, so far as we have been advised, been invariably determined adversely to plaintiff's contention.

Now the loan agreement makes provision for two contingencies, the first, when the insured, at a time when his total indebtedness to the company under his policy equals its cash surrender value, fails to pay interest upon his loan; and the second, when the insured, who is indebted to the company as evidenced by such loan agreement, fails to pay a premium due upon his policy. In the first instance the company, upon the giving of thirty-one days' notice, may avoid or forfeit the policy for the nonpayment of interest; in the second instance the insured himself, and without any intervention on the part of the company, permits his policy to lapse under its own terms for the nonpayment of premium, in which event the company is authorized to deduct his indebtedness from the cash surrender value of the policy, and to apply the residue of the surrender value, if any, to the purchase of paid-up or extended term insurance, unless the insured elects to receive such residue of the surrender value of his policy in cash.

Thus it is to be observed that the contract provides for two remedies which are wholly separate, distinct, and independent of each other, and which are plainly designed to apply to two different situations that may arise, though indeed intended in either instance to serve the same ultimate purpose of securing the company in its loan made to the insured upon the sole security of his policy. In other words, while a loan of the character of the one in question may conceivably be regarded as constituting a personal obligation of the insured,—and our local courts seem so to hold—yet it unquestionably differs in many material aspects from an ordinary commercial loan; it is in a practical sense but a payment or advancement to the insured against the reserve on his policy; and the only security which the company has for its repayment is to be found in the existence of the reserve under the policy, which serves to determine the measure of either the cash or loan value of the policy. So it is that in making a loan under the policy the company undertakes to protect itself against the loss of its sole security by providing in the loan agreement that whenever the total indebtedness of the insured shall equal such cash surrender value, whether at the due date of a premium or not, then upon the failure of the insured to pay interest thereon the company may foreclose upon the pledged policy after thirty-one days' notice; while in the event of the lapse of the policy by reason of the

nonpayment of a current premium, when the insured's outstanding indebtedness may or may not equal the full cash surrender value, the company may deduct such indebtedness from the cash surrender value in computing the full value of the policy, if any, for the purpose of the exercise of either of the three nonforfeiture options provided therein.

In this instance defendant is correct when it says that there was no forfeiture of the policy or foreclosure upon it by reason of the failure of the insured to have paid an installment of interest due. In fact it would appear from the language of the loan agreement that no interest was due from the insured until the next succeeding anniversary of the date of the policy, which would have been July 6, 1932, and not January 6, 1932, when the insured permitted himself to become in default in the payment of his premium due upon said date. What actually happened was that the policy lapsed under its own terms for the nonpayment of premium; the company thereupon applied the reserve of the policy to the payment of the insured's indebtedness to it as it was entitled to do under the contract; and inasmuch as the insured's indebtedness wiped out and extinguished the whole of the reserve, there was no value left in the policy to be applied to the purchase of extended term insurance.

It is apparent, therefore, that in a true sense the insured's policy was not avoided or forfeited by the company. The policy had provided that the insured should have certain rights under his policy if he ceased to pay the premiums to keep it alive; he ceased to pay the premiums, and he was afforded all the rights guaranteed him under his policy. Such rights, insofar as serving to extend the term of his policy, were of course wholly valueless to the insured in this particular instance because of the fact that he had theretofore exercised a further right of borrowing from the company an amount equal to the full reserve under his policy as of said date, but that his non-forfeiture options were valueless does not militate in the least against the propriety of the conclusion that it was nevertheless his own failure to have paid the premiums due which served to extinguish his policy for all further purposes, and not any forfeiture on the part of the company under and by reason of circumstances, which, to have rendered a forfeiture effective, would have required the giving of notice as plaintiff now contends. [Palmer v. Central Life Assur. Soc. of United States, 193 Minn. 306, 258 N. W. 732; Schoonover v. Prudential Ins. Co. of America, 187 Minn. 343, 245 N. W. 476; Columbus Mut. Life Ins. Co. v. Hines, 129 Ohio St. 472, 196 N. E. 158; Hally v. Standard Life Ins. Co., 38 Ga. App. 623, 144 S. E. 674; Penn Mutual Life Ins. Co. v. Fiquett, 229 Ala. 203, 155 So. 702; Mills v. National Life Ins. Co., 136 Tenn. 350, 189 S. W. 691; Moss v. Aetna Life Ins. Co. (C. C. A.), 73 Fed. (2d) 339; Hawthorne v. Bankers' Life Co. (C. C. A.), 63 Fed. (2d) 971; Bach v. Western

States Life Ins. Co. (C. C. A.), 51 Fed. (2d) 191; Pacific Mutual Life Ins. Co. v. Davin (C. C. A.), 5 Fed. (2d) 481.]

But plaintiff says that the above authorities should not be held to govern the instant case in that they ignore what she regards as the contract right of the insured to have repaid his loan at any time, regardless of whether the policy was in force or whether it had lapsed for nonpayment of premium, and thereby to have restored and reestablished the reserve value of his policy for the purpose of the assertion of all his rights thereunder.

As a matter of fact, to whatever extent those authorities may be said to have ignored the question of the right of repayment, it was only because such issue had no proper place in the case. In making her point plaintiff is of course still laboring under the misapprehension that defendant foreclosed upon the policy because of the nonpayment of interest, whereas in truth it did no such thing, as we have already pointed out, but only repaid itself out of the reserve value of the policy, as it had the clear right to do, after the insured himself had voluntarily permitted his policy to lapse. In any event the question of what the rights of the insured might have been upon the repayment of his loan is more academic than real, since he concededly made no repayment, and therefore put himself in no position to claim a revival or extension of the policy for any purpose. [Hally v. Standard Life Ins. Co., supra.]

The fact is, however, that under the circumstances of this case he had no right to make repayment of his loan after his last premium had been in default for the grace period of thirty-one days. The only provision in the contract for repayment of a loan after default in payment of premium appeared in connection with the clause relating to the insured's right of reinstatement. In other words, the right given in the one clause to repay a loan "at any time" must have meant at any time before maturity or before the otherwise complete extinguishment of the policy under its own terms; and reading all the provisions of the policy together, it is evident that after default in the payment of premium the only right of repayment which the insured had was incident to his right of reinstatement. [McCall v. International Life Ins. Co., 196 Mo. App. 318, 334, 193 S. W. 860, 865.]

Now the reinstatement clause provided that at any time after default in payment of premium the policy might be reinstated upon certain specified conditions, but only in the event that the cash surrender value had not been paid, nor had the extension term expired, if the policy should have been so carried. Here the cash surrender value had been paid in the sense that it had been used in its entirety to discharge the indebtedness of the insured, and there had been no extension term for the reason that after the indebtedness of the insured had been discharged there had been no surplus value remain-

ing to provide for extended insurance. Consequently the policy must be held to have lapsed for all purposes after the last premium had been in default for the grace period of thirty-one days; the situation was thereafter as though the insured had never had the policy; and there was nothing existent to be reinstated, and no outstanding indebtedness of the insured to be repaid.

Still insisting that defendant undertook to forfeit the policy for nonpayment of interest but without the required notice to the insured to have made a forfeiture effective, plaintiff makes the point that in the course of certain correspondence between her counsel and the company the latter placed its own practical construction upon the contract in accordance with plaintiff's theory of it, and should thenceforth be bound by the construction it itself adopted.

Counsel had written the company on May 6, 1932, inquiring the value of the post-mortem dividend that would have accrued to the benefit of the policy if no question had arisen regarding the policy having been in force at the time of the death of the insured, and also inquiring whether a notice of forfeiture under the repayment of loans provision of the policy had been given. To this letter the company, on May 11, 1932, made reply, the pertinent portion of which was as follows:

". . . in this particular instance, in view of your request, we would inform you that had the policy not been lapsed but had been kept in force up to the date of the insured's death, a 1932 post-mortem dividend would have been $10.66. Notice of cancellation of the policy would have been sent out in the usual course of events, had not we been informed of the death of the former insured."

We have already held to the general effect that the contract in question was plain and unambiguous, and therefore even if defendant might be thought to have put the wrong construction upon it, the court would not be bound by that construction, but would still be required to give proper effect to the express terms and provisions of the contract. [Southern Surety Co. v. Coltra (Mo. App.), 9 S. W. (2d) 661, 663.]

However we do not believe that the letter of the company is fairly subject to the interpretation which plaintiff would have us put upon it. The company spoke of the policy as having been "lapsed," and not "forfeited," and in adverting to the notice of cancellation which would have been sent out in the usual course of events if the company had not meanwhile been informed of the death of the former insured, it was plainly referring to a notice of a past and completed transaction, something already done and ended, and not to a notice of something that it expected to do or would have done thirty-one days after the mailing of such notice. Very likely it was the practice of the company to do its policyholders the courtesy of advising them when their rights under their policies had ceased, and undoubtedly

it would have so advised the insured in this case if it had not meanwhile learned of his death, but it would be doing violence to the clear intent of the company's letter to hold that by referring therein to a notice of cancellation it meant to convey the idea that any notice to the insured had been required of it before it was entitled, upon his default in the payment of premium, to have applied the reserve under his policy to the payment of his total indebtedness to the company. In fact its whole course of conduct was otherwise, as we have already pointed out, and it would be almost inconceivable that it intended to take a position in this letter utterly inconsistent with that it had theretofore taken in treating the policy as lapsed and in denying all liability to plaintiff thereunder.

Finally plaintiff suggests that the post-mortem dividend of $10.66 referred to in the company's letter of May 11, 1932, should have been applied to the reserve of the policy for the purpose of purchasing extended term insurance, and it is agreed that such a sum, if applied as a net single premium for the purchase of extended term insurance at the insured's age on January 6, 1932, the date of the lapse of the policy, would have purchased extended term insurance for the full value of the policy for a period extending beyond the date of the death of the insured.

The policy contained a provision that at the end of each policy year so long as the policy remains in force there would be distributed thereon the proportion of the divisible surplus contributed by such policy, together with a further provision that if the policy should become a claim by death after the first policy year, the surplus distribution for the current policy year would be paid in cash in addition to the sum insured.

The agreed facts in the case show that on November 9, 1931, at a regular meeting of the board of directors of the company, there was adopted a resolution directing an apportionment of surplus funds to be paid upon those policies "which shall be in force upon their respective anniversaries in 1932."

The policy in suit was not in force upon its anniversary date of July 6, 1932, having theretofore lapsed as of January 6, 1932, nor was it subject to the post-mortem provision heretofore referred to inasmuch as it never became a "claim by death" within the meaning of the policy, having ceased and been determined for all purposes prior to the death of the insured.

The peremptory declaration of law requested by defendant at the close of the whole case should have been given. The judgment rendered by the circuit court should therefore be reversed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.