## Prudential Ins. Co. of America v. Smith.

(Decided Dec. 7, 1937.)

SAMUEL S. BLITZ and BRUCE & BULLITT for appellant.

MAX GREENSTEIN and W. A. HUBBARD for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The Prudential Insurance Company of America has appealed from a judgment for $2,000 in favor of Lillian Smith, the beneficiary of a policy of insurance on the life of her husband, Edward B. Smith. The appellant denied liability on the ground that the policy had lapsed for nonpayment of premiums. The policy, which was issued November 28, 1923, required payment in advance of a quarterly premium of $20.40 on the 20th day of February, May, August, and November of each year. The last quarterly premium paid by the insured was the one due February 28, 1928, which continued the policy in force to the next premium date, May 28, 1928. Neither the premium due May 28, 1928, nor any subsequent premium was ever paid. The insured died March 20, 1932

On May 22, 1928, six days before the default in premium payment, he borrowed from appellant on the security of the policy, the sum of $150. The cash surrender value of the policy at that time was approximately $201. The policy lapsed for the nonpayment of the May 28, 1928, premium at the end of the 31-day grace period, and the insured, by its terms, had the

option, upon surrender of the policy, of receiving the full cash surrender value less any indebtedness to the company or a paid-up endowment policy, dated on the due date to which premiums had been paid, to mature at the same time as the surrendered policy. If the insured failed to exercise his option within 3 months after the due date to which premiums had been paid, the provision for nonparticipating paid-up term insurance became operative without any action on his part. This provision of the policy, entitled "Automatic Extended Insurance," reads:

"If this Policy, having lapsed or become forfeited as specified in the clause, 'Paid-up Endowment Policy,' above, be not surrendered for its Cash Value or for a Paid-up Endowment Policy, the Company will put in force in lieu of this Policy, without any action on the part of the Insured a non-participating Paid-up Term Policy for the full amount insured by this Policy, exclusive of Disability and Accidental Death Benefits, the date of such Paid-up Term Policy to be the due date as specified on the first page hereof to which premiums on this Policy have been paid, and to continue in force for the term indicated by the following table, and to provide that if the Insured be living at the end of the term stated, the Pure Endowment specified in said table shall be paid to the Insured in cash; provided, however, that the Insured shall not have the right to borrow on such Policy, and that if there be any indebtedness to the Company on account of this Policy the amount of such Paid-up Term Policy shall be the Face Amount of Insurance under this Policy less the amount of such indebtedness, and the term for which such Paid-up Term Policy shall run shall be changed to that term for which the Cash Surrender Value of this Policy herein specified, after deducting such indebtedness, will carry the modified amount at Single Premium Term rates, such term not to exceed, however, the unexpired portion of the Endowment period; and the amount of the Pure Endowment, if any, shall be changed to that amount which the remainder of the cash value of the Policy after deducting the indebtedness and the single premium for such Term Insurance will purchase at Single Premium Pure Endowment rates. The Paid-up Term Policy will be delivered on the legal surrender of this Policy."

The reserve, after deducting the insured's indebtedness of $150 to the company, was sufficient to purchase nonparticipating extended insurance for a term of 3 years and 25 days beyond May 28, 1928, or until June 22, 1931. It will thus be seen that the extended insurance expired 9 months before the insured's death on March 20, 1932.

The appellee claims that the insured had a right, after the policy had lapsed for the nonpayment of premiums, to pay the loan in cash and thereby restore the full reserve which, if it had been available, would have extended the term insurance beyond the date of his death. Mrs. Smith, the beneficiary, testified that on January 28, 1929, she tendered to appellant the sum of $156.33, which was the amount of the loan with the interest due to that date. She also testified that she tendered $44.88 at the same time in payment of the past-due premiums with interest thereon. It may be said in passing that this tender, if made, was not sufficient, since three quarterly premiums, amounting in all to more than $60, were then past due. The appellant denied that any such tenders were ever made, but in view of our conclusion that the insured did not have a right to repay the loan in order to make the full reserve available for the purchase of a longer term of extended insurance without having the policy reinstated in accordance with its terms, it is unnecessary to consider the evidence concerning the alleged tenders.

In the loan agreement signed by Edward B. Smith and Lillian Smith, who was named beneficiary in the policy, this provision appears:

"That if said Policy shall lapse or become forfeited in any manner, the amount of said loan, including any unpaid Loan Insurance premiums, with interest accumulated and accrued thereon shall be deducted from any cash surrender value of the said Policy, or the said loan, including any unpaid Loan Insurance premiums, with interest accumulated and accrued thereon shall operate in accordance with the rules of the Company to reduce the amount of any paid-up life or endowment policy, or the amount of any paid-up pure endowment policy, or to reduce the term of extended insurance or to reduce the amount and the term of extended insurance, as may be provided by the terms of said Policy."

The reinstatement provision of the policy reads:

"If this Policy be lapsed for non-payment of premium it will be reinstated any time after the date of lapse, provided the Endowment period has not expired, upon written application and payment of arrears of premiums with interest at the rate of five per cent. per annum, together with the reinstatement of all indebtedness, provided such indebtedness be not greater than the loan value of this Policy at the time of application for such reinstatement, and provided evidence of the insurability of the Insured satisfactory to the Company be furnished."

It will be noted that before a lapsed policy can be reinstated, a written application must be filed with the company, all arrears of premiums with interest at the rate of 5 per cent. per annum must be paid, all indebtedness reinstated, and evidence of the insurability of the insured satisfactory to the company must be furnished. It is conceded that no written application for reinstatement was made, and that no evidence of the insurability of the insured was furnished. When the policy lapsed for nonpayment of premiums and the insured failed, within 3 months after May 28, 1928, to request the company to pay to him its cash surrender value less any indebtedness or to issue to him a paid-up endowment policy, a new policy for extended insurance was automatically put in force in lieu of the lapsed policy. The insured could abrogate that contract and put in force the lapsed policy only by complying with the reinstatement provision of the policy.

In support of her claim that the insured had a right to pay the loan and restore the full reserve of the original policy and thus extend the term insurance, the appellee relies upon Drury's Adm'x v. New York Life Insurance Company, 115 Ky. 681, 74 S. W. 663, 61 L. R. A. 714, 103 Am. St. Rep. 351, and Yutz v. Commonwealth Life Insurance Company, 264 Ky. 142, 94 S. W. (2d) 326. Neither of these cases supports her claim. In the Drury Case, three annual premiums were paid, and at the end of the third year the policy had a loan value of $40, which entitled the insured, in the event the policy lapsed for the nonpayment of the fourth premium, to a paid-up policy of $150 if applied for within six months after lapse, or extended insurance for the full amount for the term of 4 years and 10 months. Drury executed

his promissory note, due 12 months after date, to the insurer for the fourth premium. The note was not paid, and Drury died about one month after it fell due. Neither the note nor the policy contained a provision for reducing the term of extended insurance by deducting the debt from the reserve. As pointed out in Inter-Southern Life Insurance Company v. Morrow, 227 Ky. 293, 12 S. W. (2d) 692, it was plain in the Drury Case that the term "indebtedness" used in the nonforfeiture provisions of the policy was not intended to cover premium notes. In the Yutz Case, it was held that the execution and delivery of premium notes by the insured to the insurer constituted payment of the premiums, and that dividends earned and in the hands of the insurance company at the time the premium notes fell due should have been applied to the purchase of extended insurance. That is not this case. The loan here was not a premium loan, and, by specific provisions of the policy and the loan agreement, the appellant had the right to repay itself out of the reserve after the insured had voluntarily permitted his policy to lapse. In fact, it was the only method provided by the contract for the collection of the indebtedness by appellant. There was no purpose to create any personal obligation. In Board of Assessors v. New York Life Insurance Company, 216 U. S. 517, 30 S. Ct. 385, 386, 54 L. Ed. 597, in denying that advances made upon policies did not constitute taxable "credits" of the insurance company, the court said, concerning such advances:

"This is called a loan. It is represented by what is called a note, which contains a promise to pay the money. But as the plaintiff never advances more than it already is absolutely bound for under the policy, it has no interest in creating a personal liability, and therefore the contract on the face of the note goes on to provide that if the note is not paid when due, it shall be extinguished automatically by the counter credit for what we have called the reserve value of the policy. In short, the claim of the policy holder on the one side and of the company on the other are brought into an account current by the very act that creates the latter. The so-called liability of the policy holder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum that the plaintiffs ultimately must pay. In settling that account, interest will be computed on the item for

the reason that we have mentioned; but the item never could be sued for, any more than any other single item of a mutual account that always shows a balance against the would-be plaintiff. In form it subsists as an item until the settlement, because interest must be charged on it. In substance it is extinct from the beginning, because, as was said by the judge below, it is a payment, not a loan.''

See, also, Williams v. Union Central Life Insurance Company, 291 U. S. 170, 54 S. Ct. 348, 78 L. Ed. 711, 92 A. L. R. 693.

When the policy lapsed, the provision for a nonparticipating paid-up term policy became automatically operative. Both that provision and the loan agreement expressly stated that the indebtedness to the company on account of the policy should be deducted from the cash surrender value and that the term of extended insurance should be reduced correspondingly. The new policy superseded the lapsed policy, which terminated through default of the May 28, 1928, premium. The loan had been satisfied, and the only way in which it could be reinstated was to reinstate the policy on the security of which the loan was made, and this could only be done by complying with the provisions of the reinstatement clause. The insured secured the full benefit of the cash surrender value of his policy, and it terminated in accordance with the plain terms of the contract. The precise question presented here was decided adversely to the appellee's contention in Kimball v. New York Life Insurance Company, 98 Vt. 192, 126 A. 553, 557, where the court said:

''The policy provides that the insured could borrow on the 'sole security' of the insurance contract, and the loan agreement shows on its face that it was made 'pursuant to the provisions of the policy,' and that the loan was made and obtained 'in consideration' of the pledge of the policy 'as sole security' for the payment of the loan, with the right, in case the policy terminated for nonpayment of premiums, to liquidate the loan 'in the manner provided in the policy,' namely in the manner already indicated. The only provision for repayment of the loan, after the policy had lapsed for nonpayment of premiums, appears in that part of the reinstatement clause of the policy above quoted, which gave the insured the right, upon reinstatement, to pay or

continue the loan at his option. Hence he could not exercise the right of repayment of the loan after such default except in connection with reinstatement of the policy. The right he then had was not of repayment without reinstatement, but of reinstatement with the right to pay if reinstatement was effected. And having failed to get reinstated through his own fault, his right of repayment was gone. This result does not penalize the insured, or subject him to any hardship; he got what he contracted and paid for, in the precise manner in which he agreed to accept it.''

To the same effect is Rick v. John Hancock Mutual Life Insurance Company, 230 Mo. App. 1084, 93 S. W. (2d) 1126.

We conclude that the trial court erred in overruling appellant's motion for a peremptory instruction, and the judgment is accordingly reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.